## JOSEPH v. ROTTSCHAFER.

1. CONTRACTS—CONSTRUCTION—DUTY OF COURT TO DETERMINE TERMS OF UNAMBIGUOUS CONTRACTS.

Where there was no ambiguity in land contract and subsequent contract by which vendees exchanged vacant lot for vendors' equity and received deed of premises, it was duty of court to construe them and determine what was within their terms.

2. VENDOR AND PURCHASER—DEFAULT—RIGHTS OF PARTY ON DEFAULT OF OTHER.

Where vendees covenanted to make payments specified in contract, and vendors covenanted to complete building and make basement waterproof, covenants were concurrent and dependent on each other, so that, on vendees' failure to perform, their rights might have been forfeited by vendors, and on vendors' failure, vendees might have rescinded contract and recovered back money paid thereon.

3. DEEDS—RIGHTS OF PARTIES UNDER CONTRACTS MERGED IN DEEDS.

Where vendees contracted with vendors to exchange land for latter's equity in contract, and exchanged deeds, all rights and liabilities of parties under contracts became merged therein.

4. CONTRACTS—EARLIER CONTRACT SUPERSEDED BY LATER INCONSISTENT CONTRACT UNLESS CONTRARY INTENT APPEARS.

Where parties to existing contract enter into new agreement completely covering same subject-matter, but containing terms which are inconsistent with those of earlier contract, so that the two cannot stand together, the effect is to supersede and rescind earlier contract, leaving later agreement as only agreement of parties on subject; but if it appears that there was no intent to abrogate first contract, rule does not apply.

5. SAME—EVIDENCE—INTENT—INFERENCE.

Where there is no ambiguity in language used in new contract, there must be some expression therein from which lack of intent to abrogate earlier contract may be reasonably inferred to justify admission of proofs relative thereto and its submission to jury.

6. VENDOR AND PURCHASER—WHERE LATER CONTRACT SUPERSEDED
   EARLIER ONE, RIGHTS THEREUNDER TERMINATED.

   Where vendees, in default under land contract wherein vendors
   covenanted to make basement waterproof, executed new con-
   tract to pay amount in default and exchange land for vendors'
   equity without reservation of rights under earlier contract, and
   deeds were exchanged, rights of both parties under earlier
   contract were terminated, so that vendees are barred from
   recovering for breach of covenant thereunder.

Error to Kent; Brown (William B.), J. Sub-
mitted October 23, 1929. (Docket No. 3, Calendar
No. 34,171.) Decided December 3, 1929.

Assumpsit by Sam Joseph and another against
Dick Rottschafer and others for breach of land con-
tract. From a verdict and judgment for plaintiffs,
defendants bring error. Reversed and remanded,
with direction to enter judgment for defendants.

*Knappen, Uhl & Bryant,* for appellants.

*Linsey, Shivel & Phelps,* for appellees.

SHARPE, J. On December 22, 1926, the defendants
as vendors and the plaintiffs as vendees entered into
a written contract for the sale and purchase of a
four-story building at the corner of Leonard and
Fuller streets, in the city of Grand Rapids. The
purchase price was $18,000, of which $4,089.12 (the
agreed value of the equity of plaintiffs in certain
property conveyed to defendants) was then paid,
and the balance was to be paid in monthly install-
ments of $100 each. It contained the following pro-
vision:

"First parties hereto herein agree at their own
expense to complete the building located on the
above described premises by the installation of the

necessary furnaces, toilets, electric water pump together with the necessary connections, and to put new cement floor in basement making same waterproof, and to cover the entire area between the street and the front of stores with cement.''

About the 1st of August, 1927, Jesse C. Crawford, representing the plaintiffs, submitted a proposition to the defendants to exchange a piece of vacant commercial property on Wealthy avenue, owned by the plaintiffs, for defendants' equity in the land contract. The building had at that time been completed, and plaintiffs had entered into possession of it. Defendants had made an effort to make the basement waterproof, but, as plaintiffs claim, without success. At that time, two monthly payments on the contract were in arrears. Plaintiff Sam Joseph testified:

''I didn't want to pay on that building until it was done in the basement so I can use it. When he gave me the deed I paid him up the full amount. I paid him by simply selling him the lot up on Wealthy and paid him up.''

After some negotiation, the defendants accepted the offer on August 11, 1927, in the following language:

''The above proposition is hereby accepted for trade—Joseph to make $200 payment on contract now due. Balance even trade—sub. to $6,000 mortg. G. R. Sav. Bank.''

The deal was consummated by the exchange of conveyances on September 1, 1927. In neither the contract nor the deed was there any reference to the undertaking of the defendants to make the floor in the store building waterproof.

On February 4, 1928, plaintiffs brought this action to recover the damages they claim to have sustained by reason of defendants' failure to complete the building as provided for in the contract of December 22d. While the declaration charged other delinquencies, plaintiffs' counsel at the opening of the trial "waived all claims on the ceiling and furnaces," and liability for failure to make the basement waterproof was alone considered. In the notice attached to their plea of the general issue, defendants averred that all of their obligations under the contract of December 22d were "performed, settled, paid, fulfilled, and compromised" by the contract of August 11th, and that "said contract thereby became of no further force and effect."

At the conclusion of the proofs defendants' counsel moved for a directed verdict for the reasons stated in such notice, and renewed such motion after the jury, under the instructions given them, had found for the plaintiffs in the sum of $1,765.10. They now seek review by writ of error of the judgment entered on the verdict.

There is no ambiguity in the language used in the contracts of December 22d and August 11th. The covenants of the parties thereto are plainly expressed and easily understood. It was the duty of the court to construe them, and to determine what is, and what is not, within their terms. *Tompkins* v. *Gardner & Spry Co.,* 69 Mich. 58; *Cutler* v. *Spens,* 191 Mich. 603. In that of December 22d, the vendees covenanted to make the payments specified therein, and the vendors covenanted that they would complete the building and make the basement waterproof. These covenants were concurrent and dependent upon each other. On plaintiffs' failure to perform, defendants might have forfeited their

rights under the contract. On defendants' failure, plaintiffs might have rescinded the contract and recovered the money paid by them thereon. *Folkerts v. Marysville Land Co.,* 236 Mich. 294; *Sutton v. Meyering Land Co., ante,* 601.

The respective covenants in the contract of August 11th could have been enforced by a bill for specific performance. When fully performed, as it was by the execution of the conveyances on September 1, 1927, all the rights and liabilities of the parties under the contracts of December 22, 1926, and August 11, 1927, became merged therein.

In Black on Rescission and Cancellation (2d Ed.), § 8, the rule is thus stated:

"Since it is always in the power of the parties to a contract to rescind or abrogate it by their mutual consent, they may accomplish this result by the substitution of a new contract, implying a mutual discharge from reciprocal obligations under the original contract and the restoration of the *status quo* or compensation for altered conditions, provided that the new contract shall be complete and binding in itself, and shall embrace each and all of the parties to the original contract."

It is further said (§ 530):

"Where the parties to an existing contract enter into a new agreement, completely covering the same subject-matter, but containing terms which are inconsistent with those of the earlier contract, so that the two can not stand together, the effect is to supersede and rescind the earlier contract, leaving the later agreement as the only agreement of the parties on the subject."

See, also, 6 R. C. L. p. 923; 13 C. J. p. 603; Elliott on Contracts, § 1869; Page on Contracts (1st Ed.), § 1340; Williston on Contracts, §§ 723 and 926.

If, however, it appears that there was no intent to abrogate the first contract, the rule does not apply. But where there is no ambiguity in the language used in the new contract, there must be some expression therein from which a lack of such intent may be reasonably inferred to justify the admission of proofs relative thereto and its submission to the jury. We find no such expression in the contract of August 11th. Plaintiffs were then in default in their payments. We may assume, as plaintiffs claim, that defendants were then in default in their covenant to waterproof the basement. These covenants, as before stated, were concurrent and dependent, and either of the parties thereto might have sought legal redress therefor. Defendants insisted on the insertion therein of plaintiffs' agreement to pay the $200 of which they were in default, and, if plaintiffs then made claim for damages for breach of the covenant to make the basement waterproof, they should have insisted on a settlement thereof or a reservation of their rights thereto. The new contract certainly terminated all of defendants' rights under the old one, and, in our opinion, it also terminated plaintiffs' rights thereunder.

The judgment is reversed and set aside, with costs to appellants, and the cause remanded with direction to enter a judgment for the defendants notwithstanding the verdict.

NORTH, C. J., and FEAD, BUTZEL, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.