DECCA RECORDS, Inc., Appellant,

v.

The REPUBLIC RECORDING COM-
PANY, Inc., Appellee.

No. 12656.

United States Court of Appeals
Sixth Circuit.

Aug. 1, 1956.

Henry Cohen, New York City, Charles
P. Taft, Cincinnati, Ohio, on briefs for
appellant.

Alexander & Alexander, Franklin,
Tenn., Ward Hudgins, Nashville, Tenn.,
for appellee.

Before SIMONS, Chief Judge, and
ALLEN and McALLISTER, Circuit
Judges.

McALLISTER, Circuit Judge.

The Republic Recording Company
brought suit against Decca Records, Inc.,
claiming that it had a contract dated
February 9, 1953, for the exclusive serv-
ices of Del Wood, a pianist; that it had
expended considerable sums of money to
record a number of her compositions for
distribution and sale; that Decca, know-
ing of the existence of this contract, had
released sales of recordings of Del Wood,
which Decca had caused to be made prior
to February 9, 1953, "thereby holding
* * * out to the trade * * * that
[Decca] had the right to the use of the
services of said Del Wood," causing Re-
public irreparable injury for which it
sought $25,000 in damages. At the same
time that Republic sued Decca, Del Wood
also sued Decca; and the two cases were
consolidated for trial. We are not in-
formed by the record of the basis of Del
Wood's suit against Decca, but it prob-
ably was without any merit. The same
lawyer represented Del Wood and Re-
public in the two suits, and at the con-
clusion of Republic's proofs, he moved
that Del Wood's case be dismissed with
prejudice. She never appeared in court,
the explanation being that she was in
the adjacent state of Alabama on a tour
of seven or eight days' duration. Accord-
ingly, her case was dismissed with prej-
udice on her own attorney's motion. Al-
most a year after filing its complaint in
the instant case, Republic moved that
the complaint be amended by increasing

its claim for damages from $25,000 to $75,000; and its motion was granted.

Upon trial of the issues, and a further amendment of the complaint, the district court entered a judgment in favor of Republic against Decca in the amount of $6,455.04 as actual damages, and $40,000 as punitive damages; and Decca appeals.

The original complaint set forth that Decca, by releasing the records that had been recorded for it by Del Wood prior to her contract with Republic, *thereby* held out to the distributors and the public "that [Decca] had the right to the use of the services of said Del Wood" and that this holding out to the public had resulted in the damages suffered by Republic. It is doubtful whether this complaint stated a cause of action. However, on the last day of a three-day trial, appellee, Republic, moved to amend its complaint by an additional allegation to the effect that it had acquired by purchase all of the contractual rights existing between Del Wood and Tennessee Records, Inc., whose entire assets appellee had acquired by a purchase agreement dated February 9, 1953. By this amendment, which the trial court allowed, appellee sought to show that Decca had caused Del Wood to break her contract with Tennessee Records, Inc.; and that Republic was entitled to damages, as assignee of Tennessee Records, because of such breach of contract by Del Wood and because of its inducement by Decca.

In spite of the confusing background of the controversy and the variety and complexity of contentions advanced by the parties on appeal, we are of the view that the determination of a single issue is decisive of the case. That issue is: Did Decca induce Del Wood to break her contract with Tennessee Records? If Decca was not guilty of such inducement, Republic has no case, for it must rely upon the claimed breach of contract by Del Wood, and its inducement by Decca.

On November 29, 1950, Tennessee Records entered into a union contract with the American Federation of Musicians. This contract provided that if Tennessee Records were placed on the union's "un-fair list," any members of the union employed by Tennessee Records "shall be free to accept and engage in other employment of the same or similar character * * * for other employers * * * without any restraint, hindrance, penalty, obligation or liability whatever."

On March 26, 1952, Tennessee Records was placed upon the union's "unfair list" after a hearing upon charges that it had violated union rules as to work periods and wage scales. Two days later, on March 28, 1952, the union ordered Del Wood to perform no further services for Tennessee Records.

Up to the time that the union placed Tennessee Records on its "unfair list" and ordered Del Wood to perform no further services for it, there is no claim that Del Wood had breached her contract, or that Decca had induced her to do so.

After Tennessee Records had been placed on the union's "unfair list," Del Wood, on March 29, 1952, made the recordings for Decca, here in question, which appellee contends constituted a breach of her contract with Tennessee Records, and which alleged breach, appellee further contends, was wrongfully induced by Decca.

The district court held that even though Tennessee Records had been placed on the union's "unfair list," the contract between Tennessee Records and the union was immaterial to this case, since there was no competent, credible evidence that Del Wood had ever been a member of the union. It may, perhaps, be true that if she had not been a member of the union, the contract between the union and Tennessee Records would not have affected her. In such a case, the fact that the company had been placed on the union's "unfair list" might not have had any bearing upon Del Wood's contract with Tennessee Records, as only a member of the union, in such circumstances, would, according to the union agreement, be freed from her contract with Tennessee Records, and at liberty to contract for her services with other parties.

The crucial question, therefore, is whether or not Del Wood was a member of the union. The contract between the union and Tennessee Records provided that its terms "be deemed a part of all contracts" between Tennessee Records and members of the union, and that any members who were affected by the contract, and whose services were suspended by reason of any "unfair list" promulgated by the union, should be free to accept and engage in other employment of the same character for other persons without penalty or liability. This third party beneficiary contract covered all union members by its terms, and contemplated the incorporation, in the separate contracts of employment of each member of the union, of the conditions of employment set forth in the union contract, MacKay v. Loew's, Inc., 9 Cir., 182 F.2d 170, 18 A.L.R.2d 348; and all such members are within its protection, Yazoo & M. V. R. Co. v. Webb, 5 Cir., 64 F.2d 902. If Del Wood was a member of the union, she was, by virtue of the contract between Tennessee Records and the union, free to contract with Decca after Tennessee Records was placed on the "unfair list." If she was not a member of the union, she might not have been relieved of her contractual obligations with Tennessee Records.

Del Wood, as above mentioned, was not a witness on the trial. However, William D. Beasley, who was an official of Tennessee Records at the time of its contractual relations with Del Wood, and who was President of Republic, the plaintiff-appellee, at the time of the trial of the instant case, testified that as early as December, 1951, prior to the recordings for Decca and at a time when Tennessee Records had already executed the union contract, Del Wood was a member of the union; that after her original contract with Tennessee Records, she had joined the union, and was thereafter offered a union contract by Tennessee Records, but had refused to make any further recordings for that company subsequent to November, 1951. Moreover, the evidence is undisputed that Tennessee Records was placed on the "unfair list" after a

hearing conducted by the union on a complaint of five members, one of whom was Del Wood. In addition, the evidence shows that Del Wood, before making the recordings for Decca, was ordered by the union to perform no further services for Tennessee Records—an incredible procedure if she had not been a member of the union. Furthermore, the attorney for appellee, Republic, was, at the time of the order placing Tennessee Records on the "unfair list," the attorney for Del Wood. On the trial of the instant case, he took the witness stand on behalf of Republic, and, on cross-examination, testified that he had represented Del Wood at the time of the union hearing. He further testified that when Tennessee Records had been placed on the "unfair list" by the union, he was of the opinion that Del Wood was then free to make the recordings here in dispute for Decca; and that this opinion was based upon the provision in the contract between the union and Tennessee Records whereby any members of the union under contract to Tennessee Records were free to record for other companies upon Tennessee Records' being placed on the union's "unfair list."

The foregoing was competent and credible evidence that Del Wood was a member of the union at the time Tennessee Records was placed upon the union's "unfair list." Moreover, the fact that she was a member of the union at the time in question is not disputed. There is no proof to the contrary. It is nowhere denied.

It follows that, according to the terms of the contract between the union and Tennessee Records, Del Wood, as a union member, was free to make recordings for Decca at the time Tennessee Records was placed on the union's "unfair list"; and, accordingly, Decca was not guilty of inducing her to break her contract.

What the nature of the contract was, which was executed between Del Wood and Decca, is dwelt upon at length in the briefs; but, in view of our determination, that question is irrelevant. It is to be said also that throughout the record, it appears that, upon the trial of the case, officers of Tennessee Records and Re-

public, from time to time, implied that the contract between the union and Tennessee Records was illegal and that the action of the union in placing the company upon its "unfair list" was unlawful. There is, however, no argument made in the briefs that the contract was illegal, nor is there any proof that the action of the union thereunder was unlawful. The trial court made no findings in this respect since no issue was raised regarding the union's contract or its conduct; and the suggestion of illegality of the contract, or unlawful action of the union, appears, from our examination of the record, to be without merit.

There are other facts that, in themselves, sustain appellant's contention that it was not guilty of inducing Del Wood to breach her contract with Tennessee Records. It clearly appears that she had abandoned and repudiated this contract several months before Decca came on the scene. She had refused to record for Tennessee Records after 1951, although repeatedly requested to do so; and she had absolutely declined a union contract offered her by that company in November, 1951. Her attorney, who, as has been said, is the present attorney for appellee company, the assignee of Tennessee Records, gave it as his opinion, at the time she recorded for Decca, that Del Wood was free to do so without liability to Tennessee Records, when that company was placed on the union's "unfair list." Moreover, Decca did not release the recordings for sale and distribution until it had been advised in writing by Del Wood's attorney that she had secured her release from her contract with Tennessee Records. It is impossible to reconcile the foregoing with the conclusion that Decca induced Del Wood to breach her contract with Tennessee Records. These are all considerations that sustain appellant's contentions.

There remains one other feature of the case that merits consideration. As above mentioned, appellee relies upon its assignment from Tennessee Records, since its suit is based upon the contention that Decca induced Del Wood to break her contract with Tennessee Records; that

the latter company suffered damages thereby; and that the right of Tennessee to all its interest in Del Wood's contract—including the claim of damages—was assigned by that company to appellee. However, on the same date that appellee secured all of the rights of Tennessee under its contract with Del Wood, it entered into a new contract with Del Wood covering the same subject matter, namely, the exclusive right to her services, but containing terms inconsistent with the contract between Del Wood and Tennessee. Obviously, these two contracts could not stand together. Having secured, by assignment, Tennessee's contract, appellee occupied the same position toward Del Wood as had Tennessee, and had the same rights. The result was the same as though appellee had executed the contract with Del Wood, in the first place. But the legal effect of the new contract afterward executed between Republic and Del Wood was to rescind and supersede the former contract executed between Tennessee and Del Wood, which had been assigned to Republic. A second contract of a later date than an earlier contract containing the same subject matter, but containing terms inconsistent with the former contract, will supersede the former contract even though there is no express agreement that the new contract shall have that effect. Wardman v. Washington Loan & Trust Co., 67 App.D.C. 184, 90 F.2d 429; Housekeeper Pub. Co. v. Swift, 8 Cir., 97 F. 290; American Fruit Growers, Inc., v. Hawkinson, 21 Tenn.App. 127, 106 S.W.2d 564, 565; Joseph v. Rottschafer, 248 Mich. 606, 227 N.W. 784; Townsend & Freeman Co. v. Tabor, 190 Ky. 521, 228 S.W. 6.

In the second contract executed between appellee and Del Wood, there was no reservation by Republic of any rights to damages under the assigned contract from Tennessee. In the absence of such reservation, a contract operating to rescind a former contract, constitutes a final settlement between the parties of any differences they might have under the first contract. Bailey v. Gordon, 56 App.D.C. 30, 8 F.2d 672.

At the time, then, that appellee stood in the shoes of Tennessee by virtue of

the assignment to it of the first contract with Del Wood, it executed a new contract with her covering the same subject matter, but containing terms inconsistent with the first contract. The legal effect of the second contract was to rescind and supersede the former one. In the absence of any reservation of rights to damages, it would seem, under the authorities, that the execution of the second contract constituted a final settlement between the parties of any rights they might have under the prior contract, and precluded a recovery for any damages arising out of any breach of the original agreement.

However, as has been previously stated, the case may be disposed of on the ground that when Tennessee Records was placed on the union's "unfair list," Del Wood, as a union member, was free to make recordings for Decca without liability to Tennessee Records; and Decca was, therefore, not guilty of inducing her to breach her contract.

In accordance with the foregoing, the judgment of the district court is reversed and the complaint dismissed.