870 F.2d 657
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SALVAGE I ENTERPRISES, INC., a Michigan corporation,
Plaintiff-Appellant,
v.
DAYTON HUDSON CORPORATION, d/b/a The J.L. Hudson Company,
a/k/a Hudson's, Defendant-Appellee.
 No. 88-1283.
 United States Court of Appeals, Sixth Circuit.
 March 7, 1989.
 
 Before KRUPANSKY and RYAN, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Salvage I Enterprises, Inc., appeals the district court's grant of summary judgment for defendant Dayton Hudson Corporation in this breach of contract action. We hold that summary judgment was properly granted.
 
 
 2
 This court reviews a district court's grant of summary judgment de novo. Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)); see Fed.R.Civ.P. 56(c). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).
 
 
 3
 The facts, viewed in a light favorable to plaintiff, establish the following.
 
 
 4
 Floyd E. Avery, Sr., is the president of plaintiff Salvage I, a corporation engaged in trash and salvage removal services. Beginning in the late 1970's, Salvage I performed trash and salvage removal services and clothes-hanger recycling services for various Detroit-area Dayton Hudson stores.
 
 
 5
 In August 1981, Avery and Thomas Talbot, a Dayton Hudson employee at the downtown Detroit Hudson's store, entered an oral agreement under which Salvage I would remove all trash in the downtown store in exchange for all salvage located in the store. The parties began performing under this agreement in September 1981.
 
 
 6
 In July 1982, Dayton Hudson announced that it would be closing the downtown store in late 1982. In April and May of 1983, Dayton Hudson held a sale of various non-merchandise equipment and fixtures located in the downtown store building. At this sale a substantial amount of salvage was sold that had been in the store in August 1981, when the parties entered their oral agreement.
 
 
 7
 In May 1983, Dayton Hudson notified Avery that it planned to award its hanger recycling business, which had been performed by Salvage I, to an organization that offered a lower price. Avery responded by informing George Zimnicki, maintenance manager of the downtown Hudson's store, that Salvage I would no longer remove trash from the downtown store. To retain Salvage I's trash removal services at the downtown store, Zimnicki and Robert Matheson, building operations manager, met with Avery and offered to pay cash and give identified salvage items to Salvage I in exchange for the removal of the remaining trash in the downtown store. Avery accepted this offer, and the terms of this agreement were outlined in a letter from Matheson to Avery dated June 8, 1983. The parties performed under this agreement until approximately October 1983, when, apparently, trash removal at the downtown store was substantially completed.
 
 
 8
 The parties had little or no subsequent contact until April 1986, when Avery wrote a letter to Dayton Hudson purporting to invoice Dayton Hudson for $162,000--$540 each for 300 compactor truck loads of trash removed from the downtown store from August 1981 to August 1983. In October 1986, Avery sent another letter to Dayton Hudson, increasing the amount due Salvage I by over $200,000 to $369,936 for "additional charges ... for trash removal services for which Salvage I equipment and labor were utilized (as contrasted with the April 15 invoice for services for which sub-contractor compactors were used)."
 
 
 9
 Dayton Hudson refused to pay these charges, and in December 1986, Salvage I brought this action. In its amended complaint, Salvage I sought recovery for damages arising from Dayton Hudson's alleged breach of the 1981 oral agreement. Salvage I also sought quantum meruit recovery for Salvage I's use of non-compactor trucks to remove trash. The district court granted Dayton Hudson's motion for summary judgment, holding that an action for breach of the 1981 agreement would not lie because that agreement was merged into and superseded by the 1983 agreement, and that quantum meruit recovery could not be had because an express contract governing the same subject matter was in force. This appeal followed.
 
 I.
 
 10
 The district court held that a breach of contract action on the 1981 agreement would not lie because the 1981 agreement and 1983 agreement covered the same subject matter--trash removal service at the downtown store--but included inconsistent terms; therefore, the court held, under Michigan law the 1981 agreement was merged into and superseded by the 1983 agreement.
 
 
 11
 The district court relied upon Michigan law for the proposition that
 
 
 12
 "Where the parties to an existing contract enter into a new agreement, completely covering the same subject-matter, but containing terms which are inconsistent with those of the earlier contract, so that the two can not stand together, the effect is to supersede and rescind the earlier contract, leaving the later agreement as the only agreement of the parties on the subject."
 
 
 13
 Joseph V. Rottschafer, 248 Mich. 606, 610, 227 N.W. 784 (1929) (quoting Black on Rescission and Cancellation Sec. 530 (2d ed.)); see also Culver v. Castro, 126 Mich.App. 824, 827-28, 338 N.W.2d 232 (1983).
 
 A.
 
 14
 Plaintiff's primary argument[1] challenging the district court's merger holding is that the court erred in holding that the subject matter of the two agreements was the same. Plaintiff contends that the subject matter of the two agreements was not the same--the trash covered by the 1981 agreement was not the same trash covered by the 1983 agreement. Plaintiff analogizes to two separate purchases of the same type of goods: no one would argue that the latter purchase superseded and rescinded the parties' obligations under the prior purchase.
 
 
 15
 We find this argument unpersuasive. The subject matter of both agreements was the performance of a service: the removal of all trash at the downtown Hudson's store. The difference in the agreements was in the consideration to be paid for this service. Under the 1981 agreement it was all salvage in the store; under the 1983 agreement it was adjusted to cash plus specified salvage. Simply because the service was only partially performed when the parties entered the 1983 agreement does not make the two agreements analogous to two distinct sales of goods. That the subject matter of the agreements is the same is reinforced by the fact that the agreements are inconsistent and cannot both be enforced--under the 1981 agreement, Salvage I was to receive all salvage, but under the 1983 agreement it was to receive only specified salvage, plus cash. We hold that the subject matter of both contracts was the same.
 
 B.
 
 16
 Plaintiff also argues that the merger doctrine is inapplicable because defendant was in breach of the 1981 agreement. However, in the leading Michigan merger doctrine case, Joseph, 248 Mich. at 606, the defendant was similarly "in breach" of the original contract--he had not waterproofed the basement of the building he sold to plaintiff as required by the original, but not the later, contract between the parties. The Michigan Supreme Court clearly held that nonperformance of obligations under the original agreement did not render the merger doctrine inapplicable: " '[S]ubstitution of a new contract[ ] impl[ies] a mutual discharge from reciprocal obligations under the original contract....' " Joseph, 248 Mich. at 610 (quoting Black on Rescission and Cancellation Sec. 8 (2d ed.)). We reject plaintiff's argument that the merger doctrine is not applicable where one party has breached the original contract.
 
 C.
 
 17
 Plaintiff's final merger doctrine argument is that the doctrine should not apply because the parties did not intend the 1983 agreement to supersede and rescind the 1981 agreement. In applying Michigan contract law, this court has stated, "[A] court's primary task in construing a contract is to give effect to the parties' intention.... 'In determining contractual rights and obligations, a court must look to the intention of the parties, and a contract should always be construed so that it carries that intention into effect.' " Central Jersey Dodge Truck Center, Inc. v. Sightseer Corp., 608 F.2d 1106, 1109 (6th Cir.1979) (quoting DeVries v. Brydges, 57 Mich.App. 36, 41, 225 N.W.2d 195, 198 (1974)). However, " '[w]hen the words of a written contract are clear and unambiguous and have a definite meaning, the court has no right to look to extrinsic evidence to determine their intent.' " Id. And when parties enter two agreements covering the same subject matter, an intent not to have the latter agreement supersede and rescind the former must be express.
 
 
 18
 If ... it appears that there was no intent to abrogate the first contract, the [merger doctrine] does not apply. But where there is no ambiguity in the language used in the new contract, there must be some expression therein from which a lack of such intent may be reasonably inferred to justify the admission of proofs relative thereto and its submission to the jury.
 
 
 19
 Joseph, 248 Mich. at 611 (emphasis added).
 
 
 20
 In this case, there is no ambiguity in the 1983 agreement as outlined in the Matheson letter, and in this agreement there is no reservation of any rights under the 1981 agreement. Thus, under the reasoning of Joseph, the district court properly did not deny summary judgment on the ground that there is a genuine factual issue as to the parties' intent in entering the 1983 agreement.
 
 
 21
 We affirm the district court's grant of summary judgment for defendant on plaintiff's breach of contract claim on the ground that the 1981 agreement was merged into and superseded by the 1983 agreement.
 
 II.
 
 22
 Plaintiff's complaint also included a quantum meruit claim. The district court granted defendant's motion for summary judgment on this claim, holding that "[w]here an express contract is in force between parties, a contract cannot be implied in law which covers the same subject."
 
 
 23
 Under Michigan law, "[a] contract implied in law or quasi-contract does not require a meeting of minds but is imposed by fiction of law to avoid unjust enrichment." City National Bank of Detroit v. Westland Towers Apartments, 107 Mich.App. 213, 230, 309 N.W.2d 209 (1981), rev'd in part on other grounds, 413 Mich. 938, 320 N.W.2d 882, vacated in part on other grounds, 413 Mich. 937, 320 N.W.2d 881 (1982). However, "while an express contract is in force between the parties, a contract cannot be implied in law which covers the same subject matter." Cascade Electric Co. v. Rice, 70 Mich.App. 420, 426, 245 N.W.2d 774 (1976).
 
 
 24
 In this case, plaintiff's unjust enrichment claim is based on its use of non-compactor trucks to remove trash from the downtown Hudson store from 1981 to 1983. For purposes of the summary judgment motion, it is undisputed that there was an express contract, the 1981 agreement, in force between the parties during this period. Thus, under Michigan law, there can be no claim under an implied contract for services performed under this express contract. Accordingly, we affirm the district court's grant of summary judgment for defendant on plaintiff's quantum meruit claim.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 We reject plaintiff's preliminary argument that summary judgment was inappropriate in this case because it was based largely on deposition testimony. This argument is contrary to the language of Fed.R.Civ.P. 56(c), which expressly contemplates summary judgment based upon depositions, and it ignores a party's opportunity to depose its own witnesses and to submit affidavits to clarify and supplement deposition testimony