# STATE OF MICHIGAN

# COURT OF APPEALS

RED D FREIGHT, INC,

Plaintiff-Appellee,

v

STEVEN A. SEXTON, TS TRANSIT, LLC, GST
LOGISTICS, LLC, and GREG E. MORRISON,

Defendant-Appellants.

UNPUBLISHED
October 24, 2017

No. 330834
Monroe Circuit Court
LC No. 15-138267-CB

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

Servitto, J. (*dissenting*).

I respectfully dissent. First, I disagree with the majority's conclusion that the issuance of a temporary restraining order (TRO) requires *only* the minimal standard that "it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice." MCR 3.310(B)(1)(a).

MCR 3.310 is entitled "Injunctions" and a TRO and preliminary injunction are both included under this heading. They are thus *both* injunctions. As the 1985 staff comment to MCR 3.310 states, "The rule adopts the terminology used in the federal rule, distinguishing between the temporary restraining orders, which are entered without notice, and preliminary injunctions, which are granted with notice and after hearing." The only significant distinction, then, is procedural; i.e., how one may obtain one versus the other of these injunctions.

MCR 3.310 provides, in relevant part:

**(A) Preliminary Injunctions**.

(1) Except as otherwise provided by statute or these rules, an injunction may not be granted before a hearing on a motion for a preliminary injunction or on an order to show cause why a preliminary injunction should not be issued.

*   *   *

**(B) Temporary Restraining Orders.**

-1-

(1) A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if

(a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;

(b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required; and

(c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application.

According to the majority, a preliminary injunction requires much more intense consideration before issuance than a TRO. That consideration encompasses four factors: "(1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued." *Michigan AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 148; 809 NW2d 444 (2011). I have not located any authority stating or suggesting that the consideration to be undertaken by a judge to issue a TRO is or should be less than that undertaken in issuing a preliminary injunction. Indeed, even in its request for the TRO, plaintiff related the four factors, indicating that all four leaned in favor of issuance of a TRO. Because a TRO may be entered without notice and a hearing, and a preliminary injunction may not, imposing lesser considerations for the issuance of a TRO would not make sense. It is far more plausible that MCR 3.310(B)(1)(a) is a requirement *additional* to the four factors that must be considered when issuing a preliminary injunction.

As succinctly stated by the Supreme Court, in looking at FR Civ P 65 (the rule upon which our MCR 3.310 is based) an ex parte TRO serves a limited purpose:

"The stringent restrictions imposed . . . by Rule 65[ (b) ], on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."[*Granny Goose Foods, Inc v Teamsters*, 415 US 423, 438–39; 94 S Ct 1113, 39 L Ed.2d 435 (1974)] (internal citation omitted).

In *AFT Michigan, AFT, AFL-CIO v State*, 493 Mich 884; 822 NW2d 226 (2012), Justice Markman, in his dissent stated, "In determining whether to issue a TRO, a trial court should consider four factors: (1) whether the applicant will suffer irreparable harm if the TRO is not granted, (2) the likelihood that the applicant will prevail on the merits, (3) harm to the public interest if the TRO issues, and (4) whether the harm to the applicant in the absence of a TRO outweighs the harm to the opposing party if a TRO is granted." While this is a dissent and not binding, I do not believe this approach is inconsistent with the intent of MCR 3.310, as it was stated in the 1985 staff comment.

Utilizing the four factors, I would find that the trial court abused its discretion in issuing the TRO. It can be ascertained from the complaint that this case involves, at its core, whether defendant Sexton violated a term of an agreement, between him and plaintiff, by contacting or soliciting customers or clients on plaintiff's client list for a period of one year following the termination of his independent contractor relationship with plaintiff. The issue of whether Sexton misappropriated trade secrets for his own benefit in a competing business is also at issue. The injuries appear to be economic in nature. Economic injuries are not irreparable, as they can be remedied at law. See, e.g., *Thermatool Corp v Borzym*, 227 Mich App 366, 377; 575 NW2d 334 (1998). Thus, factor one weighs against the issuance of a TRO.

To determine whether factor two, the likelihood that plaintiff will succeed on the merits, weighs in favor of issuing the TRO requires the trial court to look at the 2011 and 2013 contracts. There are several differences between the two agreements. The 2011 contract provides for compensation to be paid to the agent (Sexton) at 40% of the net transportation revenue received by broker (plaintiff) on a bi-weekly basis. The 2013 contract provides for a 40% payment of net transportation profit on a weekly basis. The 2013 contract adds a provision whereby the agent is responsible for the total cost of operating his facilities "if in a remote location" when that limitation was not in the 2011 contract. The 2013 contract also adds a provision making the agent responsible for expenses or fines resulting from the gross negligence on the part of his employees, which changes the 2011 provision requiring daily submission of broker's paperwork to weekly submission in the 2013 contract, and changes the provision concerning the agent providing service to a customer whose credit has not been approved by the main office. Given the differences between the two documents, particularly given the change in compensation, it is highly unlikely that the two documents can stand together, as argued by plaintiff.

"If parties to a prior agreement enter into a subsequent contract that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the later document supersedes and rescinds the earlier agreement." *Omnicom of Michigan v Giannetti Inv Co*, 221 Mich App 341, 347; 561 NW2d 138 (1997). Moreover, the 2013 contract contained the following provision:

> 10. <u>Entire Agreement of Parties.</u> This agreement cannot be changed orally and constitutes the entire contract between the parties hereto. This agreement may not be changed, modified or amended, in whole or in part, except in writing, signed by the parties hereto.

-3-

"If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties . . . this declaration is conclusive as long as it has itself not been set aside by a court on grounds of fraud or mistake, or on some ground that is sufficient for setting aside other contracts . . . . It is just like a general release of all antecedent claims." *UAW-GM Human Res Ctr v KSL Recreation Corp*, 228 Mich App 486, 494; 579 NW2d 411 (1998), quoting 3 Corbin, Contracts, § 578, pp. 402-411. In *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 414 n 16; 646 NW2d 170 (2002), our Supreme Court stated:

> We note that it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract. Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract, unless it appears that this is not what the parties intended. *Joseph v Rottschafer*, 248 Mich 606, 610-611; 227 NW 784 (1929). However, where the later contract contains an integration clause, it cannot be said that the later contract does not supersede the earlier contract on the basis that that is not what the parties intended. Obviously, in such a situation, the integration clause provides clear evidence to the contrary, i.e., that the parties *did* intend the later contract to supersede the earlier contract. Therefore, the existence of an integration clause in the later contract necessarily indicates that the parties intended the later contract to supersede the earlier contract, and thus provides dispositive evidence with regard to which contract is controlling.

Due to the differences in the two contracts, most specifically, the lack of the addendum containing the "Back Solicitation" clause in the 2013 contract and the existence of the integration clause in the 2013 contract, I would find that factor two, the likelihood that plaintiff will succeed on the merits, weighs against issuing the TRO.

I find that factor three, harm to the public interest if the TRO issues, does not weigh in favor of or against the TRO, because public interest is not at issue. As to factor four, whether the harm to plaintiff in the absence of a TRO outweighs the harm to defendants if a TRO is granted, I would find that were plaintiff likely to prevail on the merits, this factor would weigh in favor of issuing the TRO. After all factors considered, I would find that the trial court abused its discretion in issuing the TRO.

Even if a TRO requires only the minimal showing that "it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice," MCR 3.310(B)(1)(a), I do not believe that showing was made here. Whether or not Sexton was held to the back solicitation provision, the relevant court rule requires that plaintiff show that immediate and irreparable injury *would result from the delay* required to effect notice on Sexton. It is not enough that plaintiff has suffered or will continue to suffer injury from the defendants' actions. Rather, plaintiff must demonstrate that it will suffer immediate and irreparable injury resulting from a delay in bringing notice upon defendants. Plaintiff has not alleged or shown that any delay required to effect notice would result in immediate and irreparable injury. Thus, the

requirement of MCR 3.310(B)(1)(a) has not been met and I would find that the trial court abused its discretion in issuing the TRO.

I would also find that the trial court abused its discretion when it denied defendants' motion to dissolve the TRO after it held a hearing. Pursuant to MCR 3.310(B)(5), "At a hearing on a motion to dissolve a restraining order granted without notice, the burden of justifying continuation of the order is on the applicant for the restraining order . . . ." At the motion hearing, defendants argued that the 2013 contract executed between the parties contained no addendum and thus the 2011 back solicitation clause relied upon by plaintiff was null. Plaintiff, on the other hand, argued that the 2013 agreement was executed to reflect that Sexton was to be paid on a percentage of profit as opposed to the percentage of revenue that the 2011 contract stated, but that the rest of the 2011 contract, including the addendum is in full force and effect. The trial court stated that the contracts were basically identical with the exception that the addendum was not included in the 2013 contract and opined that whether the two contracts stood side by side and both remained effective or whether the 2013 superseded the 2011 contracts was a question of law or possibly one of fact and upheld the continuation of the TRO. As explained above, there were several key distinctions between the contracts that make it highly unlikely that the 2011 contract, including the back solicitation clause, remains valid. I would have found that plaintiff did not justify continuation of the TRO. Accordingly, I would thus vacate the TRO. I would not find, however, as defendants request, that the 2011 contract is unenforceable as a matter of law. Instead, I would remand to the trial court and order discovery to proceed.


/s/ Deborah A. Servitto

-5-