RENDERED: OCTOBER 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0972-MR

TURF TOWN PROPERTIES, INC.                    APPELLANT

v.                    APPEAL FROM MADISON CIRCUIT COURT
                 HONORABLE COLE ADAMS MAIER, JUDGE
                 ACTION NO. 22-CI-00464

KORY ISAACS, PUBLIC ADMINISTRATOR
OF THE ESTATE OF LOIS M. WELCH;
MURRAY M. WELCH, IV, DAVIS S.
WELCH, AND JENNIFER WELCH
MOSER, IN THEIR CAPACITIES AS
SUCCESSOR CO-TRUSTEES OF THE
LOIS M. WELCH REVOCABLE TRUST;
AND JENNIFER WELCH MOSER,
INDIVIDUALLY                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND L. JONES, JUDGES.

JONES, L., JUDGE:  Turf Town Properties, Inc. ("Turf Town"), appeals an April 16, 2024 order of the Madison Circuit Court summarily dismissing its breach of contract and tortious interference with contract claims against the above-captioned appellees.  Upon review, we affirm.

## BACKGROUND

Turf Town is a real estate broker.  On or about May 2, 2022, it entered an "Exclusive Right to Sell Contract" with Lois Welch relating to property located at 1055 Boonesborough Road, Richmond, Kentucky.  The property was owned by the Lois M. Welch Revocable Trust, of which Welch was the trustee.  The contract specified among its terms that Turf Town was to serve as the listing broker with the exclusive right to sell the property on behalf of Welch; the list price would be $2,170,000; the listing period would be from May 3, 2022, through November 3, 2022; and none of the contract's terms and conditions could be validly amended or altered absent the written consent of both parties.  Welch, as the seller, also agreed to the following provision:

> 2. **COMMISSION:**  To pay said listing broker 6% of the gross contract sales price as per closing documents for services (a) in case of a sale or exchange of said property or any part of it within said listing period by the seller(s), the listing broker, or by any person or (b) upon the listing broker finding a buyer who is ready, willing and able to complete the purchase on the terms of this agreement as proposed by the seller(s) or (c) in case of any such sale or exchange of the said property or any part of it within 90 days (protection period) subsequent to the

expiration of this agreement to any party shown the
property or any part of it during the term of the listing[.]

On May 17, 2022, Turf Town found a buyer, Allen Grant, who was ready, willing, and able to complete the purchase of the property on the terms required by the contract. That same day, Turf Town (by and through its representative, Andy Strickland) emailed a copy of Grant's purchase offer to Welch and her daughter, appellee Jennifer Moser. Responding via email, Moser informed Strickland, "We will be declining the offer." She directed Strickland to remove the property from Turf Town's website and added to her email that the property "should not be on the market for sale."

On May 19, 2022, Strickland visited with Welch. He attempted to present her Grant's offer to purchase the property, but Welch declined to review it, reiterating what Moser had previously told him via email. Strickland then asked Welch to sign a one-page document, entitled "Notice of Withdrawal of Exclusive Right to Sell Contract," to memorialize Welch's relationship with Turf Town going forward. The document stated that Turf Town had listed the 1055 Boonesborough Road property for Welch as of May 2, 2022, for a sale price of $2.17 million; the parties had previously agreed that the listing would expire on November 3, 2022; and:

Seller(s) no longer desires to sell said property described
in the above set forth listing and hereby withdraws that
listing. Seller(s) understands and agrees that if said

-3-

property is sold within the terms of the original Exclusive Right to Sell Contract, this withdrawal is null and void and Seller(s) shall be liable to the listing broker under the terms of such original Exclusive Right to Sell Contract.

Welch signed the Notice of Withdrawal of Exclusive Right to Sell Contract that day. On May 23, 2022, Turf Town, by and through its authorized agent, also signed the document. Days later, Turf Town – citing clause (b) of the Exclusive Right to Sell Contract's commission provision set forth above – demanded Welch pay it $130,200 (*e.g.*, 6% of what Allen Grant would have paid for the property if Welch had accepted his offer). Welch refused to do so. On October 21, 2022, Turf Town then filed suit against Welch (individually and in her capacity as trustee of the Lois M. Welch Revocable Trust) and Moser in Madison Circuit Court, initiating the underlying litigation. In its complaint, Turf Town alleged its Exclusive Right to Sell Contract with Welch required Welch to pay it a commission of $130,200 after it had secured Allen Grant's promise to purchase the 1055 Boonesborough Road property; Welch had breached the contract when she refused to pay; and Moser had tortiously interfered with its contract with Welch by encouraging Welch to breach.

Welch and Moser answered, denying Turf Town's allegations. After a period of discovery, Welch and Moser moved for summary judgment. In their motion, they argued that when Turf Town and Welch executed the Notice of Withdrawal of Exclusive Right to Sell Contract, the two had agreed pursuant to its

plain language to effectively rescind the Exclusive Right to Sell Contract – along with any rights that may have vested under it up to that point – with the caveat that if the property was *sold* as originally contemplated, Welch would be liable for paying Turf Town's 6% commission. Because the property was ultimately never sold, no commission was owed. Because no commission was owed, Welch committed no breach of contract by refusing to pay Turf Town a commission. And, because Welch committed no breach of the contract, Moser did not tortiously cause Welch to breach.

In its written response to the appellees' motion, Turf Town argued that the Notice of Withdrawal of Exclusive Right to Sell Contract was unambiguous and legally effective. Indeed, all parties in this matter maintain that the Notice of Withdrawal of Exclusive Right to Sell Contract is an unambiguous, legally effective agreement. However, Turf Town's interpretation differed from the appellees' interpretation. Turf Town believed that because the Notice of Withdrawal of Exclusive Right to Sell Contract did not specifically identify and waive its vested right to receive a commission by virtue of clause (b) of the Exclusive Right to Sell Contract's commission provision, and because that document did not include the words "compromise" or "settlement," no such waiver occurred. Also, Turf Town argued that when it proffered and executed the Notice of Withdrawal of Exclusive Right to Sell Contract, its intention – according to the

deposition testimony of its corporate representative, Andy Strickland, and as demonstrated by the fact that it demanded a commission from Welch days after executing the document – was not to waive its right to receive a commission by virtue of clause (b) of the Exclusive Right to Sell Contract's commission provision.

As indicated, the circuit court found in favor of the appellees. This appeal followed. During its pendency, Welch passed away, and the above-captioned public administrator and successor trustees (collectively referred to herein as "Welch" for the sake of simplicity) were substituted as appellees in her stead.

## STANDARD OF REVIEW

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*MGG Inv. Grp. LP v. Bemak N.V., Ltd.*, 671 S.W.3d 76, 82 (Ky. 2023) (citation omitted). Similarly, "[t]he interpretation of a contract, including determining whether a contract is ambiguous, is a question of law to be determined *de novo* on

-6-

appellate review." *Maze v. Bd. of Dirs. for Commonwealth Postsecondary Educ. Prepaid Tuition Tr. Fund*, 559 S.W.3d 354, 363 (Ky. 2018).

## ANALYSIS

On appeal, Turf Town reasserts the argument it posited before the circuit court. We agree with the circuit court's disposition. True, the parties' Notice of Withdrawal of Exclusive Right to Sell Contract did not specifically identify and waive Turf Town's vested right to receive a commission by virtue of clause (b) of the Exclusive Right to Sell Contract's commission provision. Nor did it contain the words "compromise" or "settlement." But, "any contract may at any time be cancelled by the mutual agreement of the parties to the contract." *Aronson v. Gibbs-Inman Co.*, 283 Ky. 107, 140 S.W.2d 806, 809 (1940). And, in the absence of any reservation of rights, "a contract operating to rescind a former contract, constitutes a final settlement between the parties of any differences they might have under the first contract." *Decca Records, Inc. v. Republic Recording Co.*, 235 F.2d 360, 363 (6th Cir. 1956).

Here, the parties entered what they concede for the sake of this appeal were two mutually agreed-upon and legally binding agreements, *i.e.*, (1) An "Exclusive Right to Sell Contract," and (2) a subsequent "Notice of Withdrawal of Exclusive Right to Sell Contract." The purpose of their latter agreement was to cancel or rescind their former agreement. That much is stated in its title: "Notice

-7-

of *Withdrawal* of *Exclusive Right to Sell Contract*." (Emphasis added.) The ordinary meaning of the word "withdrawal" is not meaningfully different from "rescind" or "cancel," as each of those words denote the retracting or termination of a promise, obligation, or right.[1] Apart from its title, the substance of the parties' "Notice of Withdrawal of Exclusive Right to Sell Contract" also indicates the parties intended for this latter agreement to qualifiedly rescind their former agreement. Illustrating this point, the *converse* of the parties' "Notice of Withdrawal of Exclusive Right to Sell Contract" is:

> Seller(s) no longer desires to sell said property described in the above set forth listing and hereby withdraws that listing. Seller(s) understands and agrees that if said property is **[not]** sold within the terms of the original Exclusive Right to Sell Contract, this withdrawal is **[not]** null and void and Seller(s) shall **[not]** be liable to the listing broker under the terms of such original Exclusive Right to Sell Contract.

In the context of legal interpretation, effect must be given to that which is unavoidably and necessarily implied, as well as that which is expressed in the most appropriate language. *See Furlow v. Sturgeon*, 436 S.W.2d 485, 486 (Ky. 1969). Here, the unavoidable implication of the parties' "Notice of Withdrawal of

---

[1] *See, e.g.*, BLACK'S LAW DICTIONARY 197 (7th ed. 1999) (defining "cancel" as "To terminate a promise, obligation, or right); *id*. at 1308 (defining "rescind" as "To make void, to repeal or annul"); *id*. at 1595 (defining "withdrawal" as "The act of taking back or away").

Exclusive Right to Sell Contract" is that if the property was not sold, their prior contract – including its "commission" provision – would not have effect.

In short, Turf Town should have been aware at all relevant times that the original Exclusive Right to Sell Contract it entered with Welch entitled it to a commission even in circumstances where the 1055 Boonesborough property was not sold. Nevertheless, Turf Town agreed with Welch – by and through language of its own choosing – to rescind the original Exclusive Right to Sell Contract, reserving its right to a commission only if the 1055 Boonesborough property was sold. Its latter agreement constituted "a final settlement between the parties of any differences they might have under the first contract." *Decca Records, Inc.*, 235 F.2d at 363. Afterward, the 1055 Boonesborough property was never sold within the terms of the original Exclusive Right to Sell Contract (and indeed has never been sold); none of Turf Town's reserved rights were implicated; and accordingly, Welch breached no obligation to Turf Town by refusing to pay it a commission.

Turf Town also contends that its intention – according to the deposition testimony of its corporate representative, Andy Strickland, and as demonstrated by the fact that it demanded a commission from Welch days after executing the document – was not to waive its right to receive a commission by virtue of clause (b) of the Exclusive Right to Sell Contract's commission provision. It also points to additional evidence of its intention to that effect – evidence it

-9-

submitted contemporaneously with a CR[2] 59.05 motion after the circuit court summarily dismissed its claims.[3]

However, a CR 59.05 motion is not a vehicle for introducing evidence that could and should have been presented during the proceedings before entry of the judgment. *See Hopkins v. Ratliff*, 957 S.W.2d 300, 301 (Ky. App. 1997). Furthermore, in the absence of any contractual ambiguity – and here there is none – Turf Town's intentions must be discerned from the four corners of its contracts, and any other evidence of its subjective intentions is irrelevant. *See Melton v. Melton*, 221 S.W.3d 391, 393 (Ky. App. 2007).

What is set forth above is also dispositive of Turf Town's claim against Moser for tortiously interfering with its contract with Welch.

> To prove a claim of tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract; 2) defendant's knowledge of the contract; 3) defendant's intent to cause a breach of that contract; 4) *that defendant's actions in fact caused a breach of the contract*; 5) that plaintiff suffered damages as a result of the breach; and 6) that defendant enjoyed no privilege or justification for its conduct.

---

[2] Kentucky Rule of Civil Procedure.

[3] The appellees have moved to strike portions of Turf Town's brief that cite and rely upon the evidence Turf Town submitted contemporaneously with its CR 59.05 motion. By separate order, we have denied their motion as moot.

*Seeger Enterprises, Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 795 (Ky. App. 2017) (citations omitted) (emphasis added). Turf Town's claim against Moser fails due to the fourth of those above-stated elements. Turf Town was not deprived of a commission because Moser caused a *breach* of the Exclusive Right to Sell Contract. As discussed, Turf Town did not receive a commission due to its own voluntary decision to enter the "Notice of Withdrawal of Exclusive Right to Sell Contract" with Welch.

We find all of Turf Town's remaining arguments to be unpreserved, unpersuasive, moot, or without merit.

## CONCLUSION

Considering the foregoing, we AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Stefan J. Bing
Sonam A. Hira
Lexington, Kentucky

BRIEF FOR APPELLEES:

James T. Gilbert
Richmond, Kentucky