*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 25, 2002**

CLARENCE G. ARCHAMBO, III,

    Plaintiff-Appellant,

v                           No. 118508

LAWYERS TITLE INSURANCE
CORPORATION and CHEBOYGAN TITLE
COMPANY,

    Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

    We granted leave to appeal in this case to consider whether defendants, a title search company and a title insurer, are liable to plaintiff under a policy of title insurance, where plaintiff failed to disclose to defendants a known recorded tax lien as required by the title insurance commitment, but not required by the subsequently issued title

insurance policy.  Following a bench trial, the trial court ruled in plaintiff's favor, concluding that the policy is controlling, and thus that plaintiff is not excluded from coverage for failing to disclose a known recorded tax lien. The Court of Appeals reversed the judgment of the trial court and held that the commitment is controlling, and thus that plaintiff is excluded from coverage for failing to make such a disclosure.  This Court then remanded this case to the Court of Appeals for it to consider whether it had erred in relying on the commitment in light of the integration clause in the policy.  On remand, the Court of Appeals concluded that the policy "never became effective" because of "plaintiff's breach of the conditions precedent in the title insurance commitment."  We disagree.

The commitment provides that nondisclosure of "any defect, objection, lien or encumbrance" of which the insured has "personal knowledge or intimation" shall render the policy null and void as to that undisclosed "defect, objection, lien or encumbrance."[1]  This language is not, as the Court of Appeals held, a condition *precedent* to the effectiveness of the policy; instead, it attempts to impose a condition *subsequent* because, rather than attempting to prevent the

_____

[1] For simplicity's sake and because our resolution of this case does not require interpretation of the language "personal knowledge or intimation," this condition will hereinafter be described in terms of the nondisclosure of a known lien.

2

policy from becoming effective, it attempts to render an already effective policy null and void as to any undisclosed known liens. Accordingly, plaintiff's failure to disclose the known lien did not prevent the policy that the defendants issued from becoming effective. Further, because the policy contains an integration clause that evidences an intent to abrogate the commitment, the policy supersedes the commitment. Therefore, plaintiff is not excluded from coverage under § 3(b) of the policy for failing to disclose the known tax lien because the policy does not require such disclosure. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that Court to decide whether coverage is excluded under § 3(a) of the policy, which excludes coverage for liens "created, suffered, assumed or agreed to by the insured claimant . . . ," an issue that was raised by defendants, but not addressed by the Court of Appeals, given its conclusion that coverage is excluded under § 3(b).

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was one of three shareholders of a corporation that was formed in or about 1980 and that has ceased to exist since 1985. Plaintiff apparently had no role in the payment of corporate taxes or in the handling of the corporation's books and records,[2] and thus was unaware that the corporation

---

[2] The corporation installed solar equipment. Plaintiff testified that his role in this corporation was limited to the
(continued...)

had failed to pay its withholding taxes for the year of 1985. However, because of the corporation's failure to pay such taxes, the Internal Revenue Service in 1987 filed a lien against plaintiff, as well as the other two shareholders.[3]

After the corporation's demise, plaintiff formed a new company. This new company built a home for Victoria Bonus. In 1992, when a dispute arose regarding Ms. Bonus' ability to pay for the home, plaintiff purchased the home from her. At this point, plaintiff allegedly believed that there was no longer a tax lien in his name.[4]

First of America Bank financed plaintiff's purchase of the home and obtained title insurance from Cheboygan Title Company, an agency of Lawyers Title Insurance Corporation, which failed to discover the tax lien.[5] The commitment and

---

[2](...continued) installation of such equipment.

[3] This tax lien was filed with the Cheboygan County Register of Deeds in 1987. See MCL 211.663. It is undisputed that in 1987 plaintiff was aware of this lien and that a Notice of Federal Tax Lien Under Internal Revenue Laws had been received by plaintiff.

[4] Plaintiff testified that in 1987 he had spoken with an IRS agent who had told him that the lien would only be valid for five years. He further testified that, had he known that there was a valid tax lien in his name, the property he purchased from Ms. Bonus could have been titled to his company or to a relative.

[5] The bank originally told Cheboygan Title Company that plaintiff's name was "Clarence Archambo," and thus Cheboygan searched under that name, and did not discover the tax lien that would have been discovered had they searched under

(continued...)

policy ordered by the bank insured plaintiff's interest as owner of the home.[6] When plaintiff subsequently sold the property to Mr. and Mrs. Roberts, in 1993, the tax lien was discovered.[7] In order to clear the title, plaintiff had to borrow money from the bank in order to pay the IRS. Plaintiff subsequently brought suit against defendants to recover this payment and the interest that he has had to pay on that loan.

The commitment between the parties required disclosure of known liens, whether publicly recorded or not.[8] It specifically provided:

> This commitment is delivered and accepted upon the understanding that the party to be insured has no personal knowledge or intimation of any defect, objection, lien or encumbrance affecting subject land other than these set forth herein and in the title insurance application. Failure to disclose such information shall render this commitment and

---

[5](...continued)
plaintiff's correct name, "Clarence G. Archambo III." Plaintiff's father's name is "Clarence Archambo." Cheboygan was subsequently provided with plaintiff's correct name before issuing the policy, but when it searched using plaintiff's correct name, it only searched for liens recorded after the date of the first search, and thus the lien again was not discovered.

[6] Although both plaintiff and First of America were insured by this policy, only First of America Bank applied for the policy.

[7] The tax lien was filed against plaintiff, but once plaintiff purchased the property from Ms. Bonus, it attached to that property. See 26 USC 6321.

[8] Given our resolution of this case, we need not address the effect of the commitment's apparent attempt to exclude coverage of recorded defects, objections, liens, or encumbrances.

any policy issued pursuant thereto, null and void as to such defect, objection, lien or encumbrance.

The subsequently issued policy, however, only required disclosure of known *unrecorded* liens.[9] The policy also included an integration clause.[10]

Following a bench trial, the trial court ruled in plaintiff's favor, holding that the policy controlled. The Court of Appeals, in a split decision, reversed, holding that the commitment breached by plaintiff in not disclosing the

---

[9] The policy, § 3(b), excludes from coverage liens

not known to the Company, *not recorded* in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy . . . . [Emphasis added.]

[10] The policy, paragraph 15, entitled "Liability Limited To This Policy; Policy Entire Contract," provides:

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

known tax lien effectively voided the policy.  The dissenting judge stated that the policy controlled because of the integration clause.  Plaintiff filed a motion for rehearing, which was also denied in a split decision.  This Court then remanded this case to the Court of Appeals,[11] which affirmed its previous decision, with the original dissenting judge again dissenting.  Subsequently, this Court granted plaintiff's application for leave to appeal.  465 Mich 884 (2001).

## II. STANDARD OF REVIEW

This case involves issues concerning the proper interpretation of contracts, which are questions of law that are subject to de novo review by this Court.  *Henderson v State Farm Fire and Casualty Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

## III. ANALYSIS

### A. EFFECTIVENESS OF POLICY

The commitment requires disclosure of all known liens, while the subsequently issued policy only requires disclosure of known unrecorded liens.  In this case, plaintiff failed to

---

[11] That order provided:

> In lieu of granting leave to appeal, the case is remanded to the Court of Appeals as on rehearing granted to consider plaintiff's argument that, in light of paragraph 15 [the integration clause] of the policy of title insurance, the Court erred in relying on the title commitment.  [463 Mich 889 (2000).]

7

disclose a known recorded tax lien,[12] and thus it can be argued that he breached the commitment while not breaching the policy. The Court of Appeals held that the policy never took effect because of plaintiff's breach of the commitment. We respectfully disagree.

MCL 500.7301(d) defines "title insurance commitment" as "a document issued by a duly authorized title insurer offering to issue a title insurance policy upon performance of the conditions set forth in the document." Thus, a commitment is an agreement between an insurance company and a potential insured that, if the potential insured meets certain conditions, the insurance company will issue a policy. Such conditions are ones that the insured must meet before the insurer is obligated to fulfill his contractual duty under the commitment to issue a policy. In other words, such conditions relate to whether the insurer must issue a policy to the insured. Accordingly, such conditions do not serve as conditions precedent to the *effectiveness* of a policy; rather,

---

[12] Because we conclude that the policy controls, and thus that plaintiff was not required to disclose the recorded tax lien, there is no need to address whether plaintiff "knew" of the lien. Accordingly, we assume arguendo that plaintiff "knew" of the lien, despite his contention that, although he knew of the lien in 1987, he did not know that it continued to obtain in 1992. We also note that the trial court did not address this issue because it also concluded that plaintiff was not required to disclose the recorded tax lien. Although the Court of Appeals did not expressly address this issue, a finding of "personal knowledge" is implicit in its conclusion that defendant breached the commitment by failing to disclose the lien.

8

they serve as conditions precedent to the insurance company's *obligation to issue* a policy. Therefore, in the normal situation which, as explained below, we do not deal with here, when an insured fails to meet one of these conditions, the insurer has no obligation to issue a policy; but if, despite this failure, the insurer *does* issue a policy, the policy is nonetheless effective.

In this case, the Court of Appeals held that a condition precedent contained in the commitment was not met, and thus that the policy never became effective. We do not agree. The relevant language of the commitment provides that "[f]ailure to disclose [the known lien] shall render . . . any policy . . . null and void *as to* such . . . lien . . ." (Emphasis added.) First, clearly this is not a condition precedent to the insurance company's *obligation to issue* a policy. The condition speaks to voiding part of a subsequently issued policy, not to avoiding the obligation to issue a policy. Second, this condition is also not a condition precedent to the effectiveness of the entire policy. That is, if this condition was not met, the policy would nevertheless become effective when issued. Rather, this condition is an attempt to render the policy, *as to those liens* of which a claimant had knowledge and failed to disclose, null and void.[13] In

---

[13] We use the word "attempt" because, as we explain below, the policy that was issued expressly superseded the terms of
(continued...)

other words, this condition is an attempt to render the policy null and void, "as to" an undisclosed lien, upon the failure to disclose such lien. But, it is not an attempt to render the entire policy null and void "as to" all liens upon such a failure.

The Court of Appeals majority provided:

In the instant case, the title insurance commitment contained a specific reservation of rights to *void the policy* if plaintiff failed to disclose the existence of a lien. Plaintiff acknowledged at trial that he did not disclose the federal tax lien to his insurers. Therefore, pursuant to the explicit language of the title commitment, the resulting policy was void *with regard to* the federal lien. [Slip op at 2 (emphasis added).]

In our judgment, this paragraph contains two inconsistent statements. First, the Court of Appeals provides that the failure to disclose the tax lien "void[s]" the policy. But, in the very next breath, the Court provides that a failure to disclose only voids the policy "with regard to" the undisclosed lien, thereby acknowledging that the commitment did not attempt to render the entire policy void for failure to disclose. Rather, the commitment merely attempts to exclude coverage for that undisclosed lien. Accordingly, the failure to meet this condition does not prevent the issued

_____

[13](...continued)
the commitment. Accordingly, because the policy does not include such a condition, that condition no longer effectively exists.

10

policy from taking effect.[14]

Finally, and most importantly, the condition contained in the commitment is not a condition *precedent* of any sort. Rather, it is an attempt to make null and void some coverages in a subsequently issued policy after that policy becomes effective. Hence, it is an attempt at a condition *subsequent*. A "condition precedent" is a condition that must be met by one party before the other party is obligated to perform; a "condition subsequent" is a condition that, if not met by one party, abrogates the other party's obligation to perform. See 8 Corbin, Contracts (rev ed), Conditions, § 30.7, p 14;

---

[14] During oral argument, defendants' counsel herself conceded that the policy took effect:

> *Justice Taylor*: But do you agree it leaves the policy extant?  In other words the commitment does not say failure to meet this condition precedent ends the policy.  It just says it ends coverage as to the undisclosed lien.

> *Ms. Powers*: I agree with that, Your Honor.

> * * *

> *Justice Young*: Are you saying that any defect in the commitment voids the entire policy?  I fail to disclose one kind of encumbrance and therefore any policy that issues, whether the policy covers that defect or not, the whole policy is voided?

> *Ms. Powers*: Not the whole policy, no Your Honor.  I would submit to the Court, as I believe in response to Justice Markman's question before and also Justice Taylor, Your Honor, in this particular case I agree with the *amicus* in that the voiding part of the policy only speaks to the lien or defect or what have you at issue.  It does not speak to the entire policy.

11

Black's Law Dictionary (6th ed). In this case, the condition provided that, if the insured failed to disclose a known lien, the policy would be rendered null and void as to that undisclosed lien. Accordingly, this is not a condition precedent, as the Court of Appeals asserted. It is an attempt at a condition subsequent. Therefore, the Court of Appeals erred in concluding that, because this condition was not met, the policy did not take effect. Rather, after issuing a commitment, the insurance company issued a policy, and that policy took effect, despite the insured's failure to meet the condition in the commitment.

### B. Commitment Superseded By Policy

Because the policy took effect, there are two contracts, the commitment and the policy. Under the commitment, plaintiff was required to disclose the known tax lien, even though it was recorded. However, under the policy, plaintiff was not required to disclose the known tax lien because it was recorded. Therefore, the issue is which of these two contracts is controlling. The issuance of the commitment preceded the issuance of the policy. Accordingly,

> [t]he problem at hand can best be analyzed as a case of contract substitution. It is hornbook law that parties to a contract are not forever locked into its terms. They are at all times free to alter, amend, or modify their agreement. Moreover, the parties may execute a substituted agreement which totally supersedes the terms of the original. [*Lawyers Title Ins Corp v First Federal Savings Bank & Trust*, 744 F Supp 778, 783 (ED Mich, 1990).]

In this case, the subsequently issued policy contains an explicit statement of intent to abrogate the antecedent commitment. This intent is evidenced by the integration clause of the policy that provides in paragraph 15(a) that the policy represents the "entire policy and contract between the insured and the Company." Further, paragraph 15(b) of the policy provides that "[a]ny claim of loss or damage . . . which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy." It is clear from these provisions that the policy was intended to supersede the commitment.

As the Court of Appeals dissenting judge asserted on remand:

> I do not agree with the majority's conclusion that the integration clause, and therefore the condition of the exclusion that requires that the lien not be of record to be excluded, can be ignored because the policy is null and void based on a clause in the title commitment. The insurance company issued a policy that purported to contain the entire agreement of the parties, and which purported to insure for this lien; plaintiff was entitled to rely on the policy's representation that it embodied the entire agreement of the parties. The terms of the policy therefore control, and the inconsistent provision of the earlier title commitment cannot be relied on to void coverage because the policy itself grants coverage, and does not exclude it where the undisclosed lien is of record. [Slip op at 3.]

Because "an integration clause nullifies all antecedent agreements," *UAW-GM v KSL Recreation Corp*, 228 Mich App 486,

499; 579 NW2d 411 (1998), citing 3 Corbin, Contracts, § 578, p 404,[15] when the terms of a commitment and a subsequently enacted policy conflict and the policy contains an integration clause, the terms of the policy must control. *Lawyers Title, supra* at 783. As observed in *UAW-GM*, *supra* at 495:

> This conclusion accords respect to the rules that the parties themselves have set forth to resolve controversies arising under the contract. The parties are bound by the contract because they have chosen to be so bound.

The Court of Appeals majority, on remand, itself recognized that, if the policy had become effective, the integration clause would have protected plaintiff.[16] See slip op at 3.

---

[15] Subject only to evidence of certain kinds of "fraud (or other grounds sufficient to set aside a contract) and for the rare situation when the written document is obviously incomplete 'on its face . . . .'" *UAW-GM*, *supra* at 495, citing 3 Corbin, Contracts, § 578, pp 402-411.

[16] We note that it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract. Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract, unless it appears that this is not what the parties intended. *Joseph v Rottscafer*, 248 Mich 606, 610-611; 227 NW 784 (1929). However, where the later contract contains an integration clause, it cannot be said that the later contract does not supersede the earlier contract on the basis that that is not what the parties intended. Obviously, in such a situation, the integration clause provides clear evidence to the contrary, i.e., that the parties *did* intend the later contract to supersede the earlier contract. Therefore, the existence of an integration clause in the later contract necessarily indicates that the parties intended the later contract to supersede the earlier contract, and thus provides dispositive evidence with regard to which contract is controlling.

14

Because we conclude that the policy *did* become effective, and because the policy contains an integration clause, we conclude that the policy supersedes and operates to abrogate the commitment. Therefore, the commitment and its provision requiring the disclosure of known recorded liens did not continue in effect after the formation of the integrated policy agreement. Accordingly, we must examine the language of the policy to determine whether plaintiff's failure to disclose the known recorded tax lien excludes him from coverage.[17] The policy simply does not require the disclosure of known recorded liens. Therefore, plaintiff is not excluded from coverage under § 3(b) of the policy for failing to disclose the known lien.

## IV. CONCLUSION

Despite plaintiff's failure to disclose the known recorded tax lien, as required by the commitment, the policy took effect. Because the subsequently issued policy contains an integration clause that evidences the parties' intent to

---

[17] During trial, the president of Cheboygan Title Company, himself admitted that the policy language controls:

> *Q.* Now, in the policy itself, when a claim was made, the language in the policy is what we rely on, isn't it, as far as denial of claims and so on?
>
> *A.* Yes, that's correct.
>
> *Q.* Not the language in the commitment, correct?
>
> *A.* Correct.

abrogate the commitment, the policy controls. The policy does not require the disclosure of known recorded liens, and thus plaintiff is not excluded from coverage under § 3(b) of the policy. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that Court to decide whether coverage is excluded under § 3(a) of the policy, which excludes coverage for liens "created, suffered, assumed or agreed to by the insured claimant . . . ."

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, and YOUNG, JJ., concurred with MARKMAN, J.