**Joseph VALENTI et al., Plaintiffs,**

v.

**Richard SNYDER et al., Defendants.**

**Case No. 12–11461.**

United States District Court,
E.D. Michigan,
Southern Division.

April 4, 2012.

Order Issuing Opinion April 9, 2012.

 

 
 

 
 
 

 

 
 

 
 
 

 
 

 
 
 
 
 

Richard G. Mack, Miller, Cohen, Detroit, MI, for Plaintiffs.

### ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER [2]

ARTHUR J. TARNOW, Senior District Judge.

Before the Court is Plaintiffs' Motion for Temporary Restraining Order [2]. Because the Court recognizes the urgency of this matter and the complexity of the issues involved, the Court is issuing this Order to convey the Court's ultimate decision on the motion. The Court, however, will also issue a memorandum by Monday, April 9, 2012 explaining in more detail the reasons for its decision.

#### Procedural History

This case was filed on March 30, 2012, naming Defendants Michigan Governor Richard Snyder, and Michigan Treasurer, Andrew Dillon ("State Defendants"). Plaintiffs filed a Motion for Temporary Restraining Order [2] on the same day. The Court held a first round of hearings on the morning of April 2, 2012. Following the morning hearing, Plaintiffs filed an Amended Complaint [6], adding Defendants Kirk Lewis and City of Detroit ("City Defendants"). The State Defendants filed a Response [9]. The Court resumed the hearing on the afternoon of April 2, 2012. Plaintiffs' Motion was taken under advisement and the hearing was continued to the next day at 2:00 p.m. The parties were permitted to file supplemental briefs.

Prior to the hearing on April 3, 2012, the State Defendants filed a Supplemental Brief [13]. The City Defendants also filed a Response [15] the same day. The Court held an evidentiary hearing on the afternoon of April 3, 2012 and again took Plaintiffs' Motion under advisement. The parties were given the chance to provide further briefing by 1:00 p.m. today.

Plaintiffs filed a Supplemental Brief [16]. The State Defendants also filed a Supplemental Brief [17].

#### The Parties

Plaintiffs are Joseph Valenti, Co–Chief Negotiator for a Coalition of Unions in the City of Detroit and President of Teamsters Local 214; Regina Smith, member of the American Federation of State, County and Municipal Employees (AFSCME); George Morgan, member of AFSCME; and labor organization Michigan AFSCME Council 25.

Defendants are Richard Snyder, Governor of Michigan; Andrew Dillon, Michigan Treasurer; Kirk Lewis, Chief of Staff for Mayor David Bing; and the City of Detroit.

#### Factual Background

The present lawsuit involves an effort to protect the jobs and benefits of approximately 5,000 of Detroit's unionized employees in the wake of unprecedented political negotiations between the State of Michigan and the City of Detroit. Plaintiffs filed this suit in an attempt to save a Tentative Agreement ("TA") that was reached between the City of Detroit and a coalition of thirty City of Detroit unions ("Coalition"). The TA, which was ratified by the Coalition members and approved by the City of Detroit, involves tens of millions of dollars in concessions by union members and would extend their contracts for another three years.

Prior to the final requirement that would put the TA into effect—City Council's ratification of the TA—the State of Michigan and Governor Snyder gave the City of Detroit two options. Both options would prevent the TA from going into effect. If City Council ratified the TA, Governor Snyder would appoint an Emergency Financial Manager for the City of Detroit. As an alternative, Detroit was

given the option to negotiate a Consent Agreement to avoid takeover by an Emergency Financial Manager. Part of the Consent Agreement, however, is that the City of Detroit would not be allowed to ratify the TA, and it would place restrictive conditions on the City's ability to engage in collective bargaining.

Plaintiffs allege that the State of Michigan's negotiating tactics and political actions have violated their constitutional rights and prevented the City of Detroit from ratifying the TA. Plaintiffs bring three claims: 1) a violation of their rights under the Contracts Clause of the U.S. Constitution; 2) a violation of Plaintiffs' constitutional Due Process Rights; and 3) tortuous interference.

Plaintiffs seek a temporary restraining order (TRO) to preclude Defendants from further negotiations or actions that would interfere with the terms of the TA and its potential ratification by Detroit City Council. The Court declines to do so.

### STANDARD OF REVIEW

■ Courts are to consider "the same factors considered in determining whether to issue a TRO or a preliminary injunction." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir.2008) (quoting *Ne. Ohio Coal. for Homeless & Serv. Emps. Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir.2006)). The moving party has the "burden of proving that the circumstances clearly demand [a TRO]." *See Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

■ When evaluating a motion for preliminary injunction, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others;

and (4) whether the public interest would be served by issuance of the injunction." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.2001) (quoting *Rock & Roll Hall of Fame v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)).

■ No single factor is controlling of the outcome, although if "there is simply no likelihood of success on the merits" that is usually "fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiffs have not shown that the extraordinary remedy of a TRO is warranted in this case. Plaintiffs' arguments fall short on the critical factor of whether any of Plaintiffs' three claims have a strong likelihood of success on the merits. Plaintiffs' failure in that regard is fatal to their request for a TRO.

The remaining factors, even if weighed in Plaintiffs' favor, cannot save their claims. For instance, Plaintiffs' request for this Court to regulate the political negotiations between the State and the City or to order the Detroit City Council to ratify the TA is simply beyond this Court's authority. The Court's decision is by no means an attempt to minimize or discredit Plaintiffs' efforts in advocating on behalf of the Coalition's union members involved in this litigation.

For the reasons to be set forth in a subsequent memorandum,

IT IS ORDERED that Plaintiffs' Motion for Temporary Restraining Order [2] is DENIED.

IT IS SO ORDERED.

### MEMORANDUM REGARDING ORDER [19]

Pursuant to this Court's Order [19] of April 4, 2012, denying Plaintiffs' Motion for Temporary Restraining Order [2], the following memorandum provides an expla-

nation for the Court's decision. The Court adopts Plaintiffs' version of the facts as set forth in its Motion [2], as Defendants stipulate that those are the facts for the purposes of Plaintiffs' Motion. Because the facts are undisputed, the Court will not recite them here.

■ "A preliminary injunction is reserved for only the most egregious case, and should not be extended to cases which are doubtful or do not come within well-established principles of law." *Bonnell v. Lorenzo,* 241 F.3d 800, 826 (6th Cir.2001). The moving party has the "burden of proving that the circumstances clearly demand [an injunction]." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir.2002).

When evaluating a motion for preliminary injunction, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Bonnell,* 241 F.3d at 809 (quoting *Rock & Roll Hall of Fame v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir.1998)).

No single factor is controlling of the outcome, although if "there is simply no likelihood of success on the merits" that is usually "fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiffs have failed to show a likelihood of success on any of their three claims for: 1) a violation of their rights under the Contracts Clause of the U.S. Constitution; 2) a violation of their right to due process under the law; and 3) tortuous interference. Each claim will be discussed separately. The failure to show a likelihood of success on the merits is fatal to Plaintiffs' arguments for a TRO. The Court, therefore, finds it unnecessary to discuss the remaining TRO factors.

*Contracts Clause*

■■ Plaintiffs claim that the negotiations between the State Defendants and City Defendants have violated their rights under the Contracts Clause of the Constitution. Before a party can succeed on a Contracts Clause claim, a pre-existing contract must exist. *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 187–88, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). Here, the TA was never ratified by City Council. The TA, without ratification, cannot sustain Plaintiffs' Contract Clause claim.

Plaintiffs rely on an unpublished decision by the Michigan Court of Appeals for their argument. The Michigan Court of Appeals has held that in certain situations, public sector collective bargaining agreements ("CBAs") are binding contracts when both party representatives have signed a CBA, whether or not ratification has taken place. *AFSCME Council 25 v. Chippewa Cnty.,* 2007 WL 3171252, at *3–4 (Mich.App.2007) (internal citation omitted). In *AFSCME Council 25,* the court also held that ratification is a condition subsequent that is to be performed after the contractual arrangement takes effect between two parties. *Id.*

Plaintiffs' argument fails for two reasons. First, *AFSCME Council 25* is distinguishable from the present case. In *AFSCME Council 25,* the Court of Appeals considered a TA with respect to an employee's decertification petition that was filed during the 30–day grace period following the negotiation of the TA. Here, Plaintiffs are relying on this case to support the notion that the City and the Union are bound by the TA, even though the City Council has not ratified it. The Court is not convinced that *AFSCME Council 25* applies to the present case. Even if it did,

the Plaintiffs' next step in the analysis presents another fatal obstacle.

■■■ Plaintiffs argue that once the parties to the TA approved it, that a binding agreement was created and that City Council's ratification is merely a condition subsequent that would have no effect on the alleged binding agreement. A condition subsequent is a condition, which is to be performed after the contractual arrangement takes effect between two parties. *Archambo v. Lawyers Title Ins. Corp.*, 466 Mich. 402 412, 646 N.W.2d 170 (2002). "[A] 'condition subsequent' is a condition that, if not met by one party, abrogates the other party's obligation to perform." *Id.*

In this case, if the City Council's ratification of the TA is a condition subsequent—it is unclear if it is—then the City Council would still have to complete the condition subsequent to bind both parties. Therefore, even under Plaintiffs' reasoning, City Council's failure to ratify the agreement would simply let Plaintiffs off the hook with respect to their obligations under the agreement. Plaintiffs have not presented any argument to support the idea that without ratification, the agreement must be carried out by the parties.

Because the Plaintiffs have not shown that there was a binding contract in place, the Plaintiffs have not shown a likelihood of success on the merits as to the Contract Clause claim.

*Substantive Due Process*

■■■ Plaintiffs argue that argue that they are likely to succeed on their claim that Ds unconstitutionally deprived them of their right to bargain under Michigan Labor Law without providing them notice and opportunity to be heard prior to the deprivation. They argue that a consent agreement or appointment of an Emergency Financial Manager would preclude the City from collectively bargaining with the Coalition.

To address Plaintiffs' argument the Court would first have to decide whether Plaintiffs have a property interest, namely the right to collective bargaining. Plaintiffs argue that under the Public Employment Relations Act (PERA), they have a protected right to bargain over wages, hours, and terms and conditions of employment. MCL § 423.215(1). The statute provides:

> A public employer shall bargain collectively with the representatives of its employees as described in section 11[ ] and may make and enter into collective bargaining agreements with those representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession.

*Id.* (footnote omitted).

PERA was amended by the Michigan legislature to include limitations in subsections (8), (9), and (10). The amended sections provide that a public employer is exempt from the obligation to collectively bargain in certain situations: 1) pursuant to the local government and school district fiscal accountability act; 2) when a unit of local government enters a consent agreement; and 3) if the city requires and specifies a method of selection of a retirant member of the fire department, police department, or fire and police department

pension or retirement board. *Id.* at §§ (8)-(10).

Plaintiffs' reliance on a Michigan statute to establish the right to collective bargaining would require this Court to interpret Michigan state law, specifically whether collective bargaining is a protected right. Even if the Court were to hold that collective bargaining is a protected right, Plaintiffs' have failed to show that the extraordinary remedy of a preliminary injunction is warranted in this case. Plaintiffs have not cited clear precedent that supports their position. Without strong support, the Court cannot grant Plaintiffs' request, especially considering the late date of the filing. This is not to say that Plaintiffs cannot win on this claim. Plaintiffs simply have not shown it at this stage, especially in light of Defendants' response.

*Tortuous Interference*

Plaintiffs argue that the State Defendants have tortuously interfered with their favorable business relationship with the City of Detroit. Plaintiffs' claim is based on the "threats" from the Governor and Treasurer. Plaintiffs, however, have not presented any evidence to suggest that Defendants acted outside of their authority. The Court considers the alleged threats to be typical political negotiations. The Court has no authority to regulate the negotiation tactics of elected officials or unions, and Defendants are immune from liability under MCL 691.1407(5). *Id.* (establishing immunity for elected officials and executives acting within the scope of their legislative and executive authority). Therefore, Plaintiffs have not shown the likelihood to succeed on the tortuous interference claim.

The Court finds that Plaintiff has not shown a likelihood of success on the merits. For the reasons stated above and in the Court's Order [19], Plaintiffs' request must be denied.