# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JIMMY D. FARMER, by
PATRICIA J. FARMER, Personal Representative,
and FARMER SAND & GRAVEL, INC.,

UNPUBLISHED
August 2, 2018

Plaintiffs/Counterdefendants-
Appellees,

v

No. 338501
Washtenaw Circuit Court
LC No. 13-000665-CH

JOHNNY RAY FARMER,

Defendant/Counterplaintiff-
Appellant,

and

FARMER BROTHERS TRUCKING CO., INC.,
and J & J FARMER LEASING, INC.,

Defendants/Counterplaintiffs.

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

This matter arises from a dispute concerning business dealings between defendant/counterplaintiff, Johnny Ray Farmer, and his now deceased brother, Jimmy D. Farmer. Following a four-day bench trial, the trial court ordered Johnny to pay plaintiffs, the Estate of Jimmy D. Farmer and Farmer Sand & Gravel, Inc. (FSG), $445,645.43 pursuant to a promissory note and $72,000 for unpaid rent. In addition, the trial court found that Johnny owned 27.8% of FSG's shares and that Jimmy's estate owned 72.2% of FSG's shares. Johnny appeals as of right. We affirm.

Before Jimmy's death in 2013, Jimmy and Johnny owned several businesses together, but only the ownership and financial assets of one business—FSG—is at issue in this appeal. FSG was formed in 1992 by Johnny, Jimmy, and their two other brothers, Doug Farmer and Leroy Farmer. FSG owned and operated a sand and gravel business in Manchester, Michigan, and

-1-

Jimmy was responsible for FSG's daily operations. In 2002, Johnny began living in a rental home located on property owned by FSG. He did not pay rent.

Originally, all four brothers owned 25% of FSG's shares. However, Leroy and Doug left the business in 1996. On February 19, 1998, Jimmy and Johnny signed an agreement at a FSG board of directors meeting stating that Jimmy owned 72.2% of FSG and Johnny owned 27.8% of FSG. It appears to be undisputed that this ownership allocation was based on Johnny's and Jimmy's respective investments into the company. According to the agreement, Jimmy invested a total of $130,208.55 (including cash, equipment, and investments) while Johnny invested a total of $50,208.54. On March 9, 1998, Johnny and Jimmy also signed a corporate statement revoking FSG's Subchapter S tax election under 26 USC 1362, likewise indicating that Jimmy owned 72.2% of FSG and Johnny owned 27.8% of FSG. However, while FSG's tax returns for 2011 and 2012 reflected these ownership interests, FSG's returns for 1999 through 2010 indicated that Jimmy and Johnny held equal 50% interests in FSG.

On or about December 20, 2001, a promissory note was executed providing, in pertinent part, the following:

> For value received, [FSG], the undersigned ("Borrower") promises to pay to JIMMY DEAN FARMER ("Creditor"), the principal amount of EIGHTY THOUSAND AND NO/100 DOLLARS ($80,000.00) and interest computed on the basis of a 360-day year for the actual number of days elapsed on the unpaid principal balance at a rate per annum of EIGHT PERCENT (8%) until maturity. The interest rate on this note shall be adjusted on the first day of each calendar quarter. This note shall commemorate an agreement first entered into on the 1st day of April, 1992. Interest shall commence as of the date of the above referenced actual agreement.
>
> The principal of this note shall be paid in full on the date of closing on the sale of the corporation. [sic] whichever shall occur earlier. Accrued interest shall be added to the principal balance and shall compound as indicated above. Borrower may prepay all or part of the principal of this note at any time.

Both Jimmy and Johnny signed the promissory note.

Following Jimmy's death, his estate filed a complaint in the trial court, raising several disputes regarding the brothers' business dealings, and the case eventually proceeded to a bench trial. Relevant to this appeal, the trial court found that Johnny owned 27.8% of FSG, that Jimmy had owned 72.2% of FSG, that FSG owed Jimmy's estate $445,645.43 pursuant to the promissory note, and that Johnny owed FSG $72,000 in unpaid rent. This appeal followed.

First, Johnny argues that the trial court's rulings regarding FSG's ownership distribution and the promissory note resulted in a "double dip." According to Johnny, the promissory note was executed for the purpose of recognizing Jimmy's larger initial investment in FSG, which should have resulted in equalized ownership interests. Thus, Johnny contends that the trial court should have held that he owns 50% of FSG and FSG was indebted to Jimmy under the

promissory note, or, alternatively, that he only owns 27.8% of FSG and FSG was not indebted to Jimmy under the promissory note.

This Court reviews "a trial court's findings of fact in a bench trial for clear error . . . ." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "Because this case was heard as a bench trial, the court was obligated to determine the weight and credibility of the evidence presented." *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008). In reviewing this matter, we give deference to such determinations in recognition of "the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Glen Lake-Crystal River Watershed Riparians*, 264 Mich App at 531 (quotation marks and citations omitted).

In addition, "[t]his case involves issues concerning the proper interpretation of contracts, which are questions of law that are subject to de novo review by this Court." *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). As this Court has explained before,

> The main goal of contract interpretation generally is to enforce the parties' intent. But when the language of a document is clear and unambiguous, interpretation is limited to the actual words used, and parol evidence is inadmissible to prove a different intent. An unambiguous contract must be enforced according to its terms. The judiciary may not rewrite contracts on the basis of discerned "reasonable expectations" of the parties because to do so "is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." [*Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004) (citations omitted).]

Pursuant to these principles, Johnny's argument concerning an impermissible "double dip" lacks merit. The 1998 document signed by Johnny and Jimmy as directors of FSG unambiguously states that Jimmy owned 72.2% of FSG and that Johnny owned 27.8% of FSG. The 2001 promissory note is also unambiguous in providing that FSG was indebted to Jimmy in the amount of $80,000, plus interest. Although we acknowledge that the principal value of the note coincides with the disparity in the brothers' initial contributions, there is nothing in the language of the note to suggest that it altered the ownership division expressed in the 1998 document. Therefore, the trial court did not err by enforcing the ownership distribution set forth in the parties' written agreement while also concluding that FSG was indebted to Jimmy's estate under the promissory note.[1]

---

[1] Importantly, the parties were free to contract as they saw fit, *Burkhardt*, 260 Mich App at 657, and there are any number of reasons that the brothers may have found the unequal division to be

Next, Johnny contends that the trial court erred in ruling on the amount due pursuant to the promissory note because it did not account for payments made on the loan. We disagree.

At trial, plaintiffs' expert in forensic financial analysis testified that he reviewed relevant records in the case, and he believed that the principal amount under the promissory note was $80,000 and that the applicable interest rate was the prime rate plus 1.5%, recalculated each calendar quarter. He opined that the total due under the note as of June 30, 2015, was $445,645.43. The note would be due in full when FSG was sold. He did not believe any payments had been made on the note.

On the other hand, defendants' forensic accounting expert testified she was not given enough information to calculate the amount due under the note or to determine the applicable interest rate. She testified that based on her review of the tax returns, FSG made payments of at least $31,458 on the loan. In her report, she concluded that "[w]ithout obtaining access to Jimmy D. Farmer's financial records, we are not able to determine if any proceeds from [FSG] were deposited into his bank accounts and should be treated as repayment of the loan and as a result, a reduction in the outstanding balance of the loan." However, both experts agreed that it appeared that Jimmy issued additional loans to FSG.

Based on the foregoing, the trial court did not clearly err by holding that Jimmy's estate was entitled to recover $445,645.43 from FSG before the balance of FSG's assets could be disbursed to its shareholders. After describing the conflicting testimony offered by the parties' experts, the trial court stated that it found plaintiffs' expert more persuasive. Credibility determinations are well within the purview of the court's fact-finding duties in a bench trial and are entitled to deference on appeal. *Glen Lake-Crystal River Watershed Riparians*, 264 Mich App at 531. The calculations offered by plaintiffs' expert appear to be supported by the evidence and, accordingly, we cannot conclude that the trial court committed error requiring reversal in finding the testimony of one expert witness more persuasive than another. See *id*. at 542 (affirming trial court's decision to adopt expert's proposal where it was supported by the evidence).

Lastly, Johnny asserts that FSG's claim for unpaid rent is barred by the doctrine of laches.[2] We disagree.

---

warranted. For instance, Jimmy oversaw FSG's daily operations and there was evidence that he made additional personal loans to the company.

[2] In his statement of the questions presented for appeal, Johnny also queries whether plaintiffs' rent claim is barred by promissory estoppel. However, he cites no authority and makes no argument concerning that equitable doctrine. Accordingly, to the extent Johnny contends that the trial court should have applied promissory estoppel to plaintiffs' claim, this issue is abandoned. See *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008).

"A trial court's dispositional ruling on equitable matters . . . is subject to review de novo." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). However, the trial court's factual findings in support of its ruling are reviewed for clear error. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Glen Lake-Crystal River Watershed Riparians*, 264 Mich App at 531 (quotation marks and citation omitted).

"In order to assert a laches defense successfully, a defendant must show that the passage of time combined with intervening circumstances render it inequitable to grant relief to the plaintiff." *Badon v Gen Motors Corp*, 188 Mich App 430, 436; 470 NW2d 436 (1991). However, because laches is primarily concerned with the prejudicial effect of the plaintiff's delay, the mere passage of time is not a sufficient basis for asserting laches as a defense. See *Attorney General v PowerPick Club*, 287 Mich App 13, 51; 783 NW2d 515 (2010); *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 456-457; 761 NW2d 846 (2008). The defendant bears the burden of proving prejudice resulting from the plaintiff's dilatory actions. *Attorney General*, 287 Mich App at 51.

We agree that there was a lack of due diligence on FSG's part in not filing a lawsuit for unpaid rent until 2013, despite evidence suggesting that rent was demanded as early as 2003. However, Johnny did not sufficiently demonstrate that he was prejudiced by the delay. The primary basis for his assertion of prejudice is that he would not have moved from his previous residence, where he was not obliged to pay rent, only to incur rent by living on FSG's property. We find Johnny's argument unpersuasive in light of his trial testimony indicating that he still owned his previous residence and had collected rent from that property beginning in 2003. In a cursory manner, Johnny also indicates that he was prejudiced because he could have demanded dividends and other payments from FSG, but he fails to point to any evidence that his ability to seek dividends was somehow limited by his residency on FSG's property. Accordingly, Johnny has not established a viable laches defense and he is not entitled to appellate relief on that basis.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Anica Letica