NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0024n.06

No. 24-1291

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 21, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| TACHI-S ENGINEERING U.S.A., INC., | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CANOO TECHNOLOGIES INC., fka | ) | MICHIGAN |
| Evelozcity Inc., | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: GRIFFIN, STRANCH, and MATHIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Canoo Technologies Inc. brings this interlocutory appeal of the district court's order denying its motion to compel arbitration in this action. Because the parties did not agree to arbitrate the claims in this action, we **AFFIRM**.

## I. BACKGROUND

Tachi-S Engineering U.S.A., Inc. is a supplier of seats for mass market compact cars and SUVs, incorporated in Michigan. Canoo Technologies Inc.[1] is a manufacturer of mass market and specialty electric vehicles, with headquarters in California. On October 2, 2018, Tachi-S and Canoo entered a "Collaboration Agreement" under which Tachi-S would supply Canoo seats for its vehicles. The Collaboration Agreement set forth invoicing, delivery, warranty, and confidentiality terms, as well as an arbitration provision that stated, in part,

---

[1] Canoo previously did business as Evelozcity Inc. For simplicity, we refer to it as Canoo.

> Any controversy or claim arising out of or relating to this Agreement, shall be settled by arbitration before three arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall be held in the County of Los Angeles, California. In rendering an award, the arbitrators are bound by the terms of this Agreement, the NDA, and applicable SOWs and must apply the substantive law of California other than its principles of choice of law.

R. 4-2, Collaboration Agreement, PageID 52. The Collaboration Agreement further provided that, out of its 15 sections, " Sections 1, 2(c), 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, and 15," including the arbitration clause, "survive termination of [the Collaboration] Agreement for any reason." R. 4-2, PageID 50-52. For approximately five years, Tachi-S developed and produced Canoo's seats pursuant to the Collaboration Agreement and subsequent transaction-specific purchase orders.

Eventually, Tachi-S and Canoo disputed whether Canoo had authorized some of Tachi-S's capital expenses and inventory purchases such that Canoo had to reimburse Tachi-S for those amounts. By 2023, Tachi-S maintained that Canoo owed it over $15 million for these disputed amounts pursuant to a number of purchase orders entered into under the Collaboration Agreement. One purchase order under the Collaboration Agreement related to Canoo's project to provide vehicles to the National Aeronautics and Space Administration and for Tachi-S to provide four prototype seats.

The disputes between the parties led to the negotiation of a new agreement. In May 2023, the parties executed an "Agreement Relating to Delivery of NASA Seats," or "the NASA Agreement." R. 1-1, NASA Agreement, PageID 7. "[E]ven though" Tachi-S considered "Canoo [] in default" of the outstanding purchase orders, Tachi-S agreed to release four prototype seats for the NASA project. *Id*. In the NASA Agreement, the parties acknowledged that Tachi-S terminated the Collaboration Agreement and its commercial relationship with Canoo.

The NASA Agreement included an enumerated list of the parties' agreements. As to Tachi-S's obligations, the Agreement acknowledged in paragraphs 1 and 2 that Canoo had already paid Tachi-S approximately $150,000 for the seats and that Tachi-S would release the four seats to Canoo upon execution of the NASA Agreement. After paragraph 3's listing of Tachi-S's total claims against Canoo, paragraph 4, "Canoo's Acknowledgement of the Debt," states that Canoo owed Tachi-S $15,636,292.70 as of the Agreement's execution, and that Canoo "confirms that it has no right of setoff or recoupment, or any other defense." *Id.*, at PageID 8-9. The Agreement's recitals of the facts also contains a clause recognizing that "Tachi-S terminated the Collaboration Agreement and the relationship" with Canoo, and paragraph 8 includes an integration clause stating:

> ENTIRE AGREEMENT. This Agreement constitutes the entire agreement between the Parties and supersedes all prior and contemporaneous oral and written agreements, promises, statements, understandings, and representations and may not be altered, modified, or amended in any respect, except upon execution by all Parties hereto of a written instrument so providing.

*Id.*, at PageID 7, 10.

After the execution of the NASA Agreement, Tachi-S delivered the four prototype seats to Canoo, but Canoo did not pay Tachi-S the acknowledged debt. Tachi-S brought this breach of contract action in the Eastern District of Michigan to recover Canoo's outstanding debt. Canoo moved to compel arbitration, arguing that the Collaboration Agreement governed the dispute and that its arbitration provision applied. The district court denied the motion, explaining that the NASA Agreement, which had no arbitration provision, superseded the Collaboration Agreement, including its arbitration provision. The court cited the integration clause in the NASA Agreement and concluded that its "unambiguous language . . . is clear evidence that Tachi-S and Canoo intended to supersede their prior Collaboration Agreement," including the Collaboration

Agreement's arbitration provision. R. 14, Order, PageID 147-48. Canoo timely filed this interlocutory appeal.

## II.   ANALYSIS

Under the Federal Arbitration Act, written agreements to arbitrate are "valid, irrevocable, and enforceable" except "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and courts must compel parties to proceed to arbitration in accordance with the terms of their arbitration agreement, *id.* § 4. Arbitration agreements are "simply contracts," so "the first question in any arbitration dispute must be: What have these parties agreed to?" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). Generally, parties' agreement to a delegation provision requiring arbitrators, and not courts, to determine whether a claim is arbitrable is enforceable if there is "clear and unmistakable evidence" "that the parties agreed to arbitrate arbitrability." *Id.* at 149 (cleaned up). By contrast, in cases where "the question is whether the parties agreed to send the given dispute to arbitration . . . *that* question must be answered by a court." *Id.* at 150.

Canoo first argues that the Collaboration Agreement's arbitration provision requires that an arbitrator, not the court, determine whether Tachi-S's claim is arbitrable, because the Collaboration Agreement's delegation provision was clear and unmistakable and no provision of the NASA Agreement contradicts the delegation provision. Canoo next argues that the Collaboration Agreement mandates arbitration of Tachi-S's $15 million claim against it. Tachi-S responds that the NASA Agreement governs the determination of arbitrability because it superseded the Collaboration Agreement in its entirety.

Our analysis begins and ends with the NASA Agreement, which the parties agree is a valid and enforceable contract. The NASA Agreement expressly acknowledges that it "constitutes the

entire agreement between the [p]arties." R. 1-1, PageID 7, 10. Thus, we must apply state contract interpretation laws to determine whether the NASA Agreement, through its integration clause, superseded the Collaboration Agreement's arbitration provision.

To answer that question, we first must determine which state's law applies. The NASA Agreement does not contain a choice of law provision. When a choice of law issue arises, federal courts apply the applicable rules of the state in which they sit. *Olenik v. Ohio Cas. Ins. Co.*, 114 F.4th 821, 825 (6th Cir. 2024). In Michigan, courts weigh five factors in determining which state's law governs a contract dispute: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Liberty Mut. Fire Ins. Co. v. Holka*, 984 F. Supp. 2d 688, 694 (E.D. Mich. 2013) (quoting Restatement (Second) of Conflict of Laws § 188 (Am. L. Inst. 1971)); *see also Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995) (applying the five factors). Applying those factors, we agree with the district court that Michigan law governs the NASA Agreement because Tachi-S's headquarters, the place of performance, and the contract's subject matter are all located in Michigan. Next, we ask whether, under Michigan law, the NASA Agreement superseded the Collaboration Agreement. The Michigan Supreme Court is clear that an unambiguous integration clause in a later contract is "dispositive evidence" that "the parties intended the later contract to supersede the earlier contract." *Archambo v. Laws. Title Ins. Corp.*, 646 N.W.2d 170, 177 n.15 (2002). Indeed, an integration clause's entire purpose "is to prohibit consideration of parol evidence by nullifying" prior agreements. *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 421 n.14 (Mich. Ct. App. 1998).

Here, the integration clause expresses a clear intent to nullify all prior agreements: the NASA Agreement "constitutes the entire agreement between the Parties and supersedes *all prior . . . written agreements*" between them. R. 1-1, PageID 10 (emphasis added). This language contains no "ambiguity," and Canoo points to no "internal inconsistency" within the NASA Agreement that would cause us to look beyond the four corners of that agreement to interpret it. *Cnty. of Ingham v. Mich. Cnty. Rd. Comm'n Self-Ins. Pool*, 975 N.W.2d 826, 834 (Mich. 2021). The "plain and ordinary meaning," *id.*, of the NASA Agreement's integration clause leads us to conclude that all prior written agreements—including the Collaboration Agreement and its arbitration clause—are superseded and no longer effective.

Canoo resists this conclusion by arguing that, under Michigan law, an integration clause in a later agreement supersedes only "*inconsistent* terms of previous contracts directed to the *same subject matter*." Reply Br. 13. It contends that "the agreements here are directed to separate subject matter and contain consistent terms"—while the NASA Agreement relates to one transaction and is silent on arbitration, the Collaboration Agreement dictates the parties' entire business relationship and contains an arbitration clause. *Id.* at 14. Citing several unpublished Michigan Court of Appeals cases, Canoo contends that "[i]n similar situations, Michigan courts hold that integration clauses do not supersede the previous contract." *Id.* at 14-16.

We disagree. Canoo conflates two independent methods for superseding a prior contract's terms with a later contract. As the Michigan Supreme Court explained in *Archambo*, one of those methods is to include an integration clause, which—on its own—can "nullif[y] all antecedent agreements," assuming its language so provides. 646 N.W.2d at 177 (quoting *UAW-GM*, 579 N.W.2d at 417). *Archambo* explained that such integration clauses will fail to so nullify only when there is evidence of "fraud" or "other grounds sufficient to set aside a contract" or in "the rare

situation when the written document is obviously incomplete on its face." *Id.* at 177 n.15 (internal quotation marks omitted) (quoting *UAW-GM*, 579 N.W.2d at 419); *see also* 6 Corbin on Contracts § 25.8 (Matthew Bender & Co. 2024) (describing *UAW-GM* as "[a] leading example of a rigid use of the [integration] clause, not allowing any extrinsic evidence [of prior agreements or negotiations] regardless of the circumstances").

*Archambo* went on to explain a second, independent mechanism for superseding an earlier contract's terms. "[I]t is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract." 646 N.W.2d at 177 n.16. "[I]f the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract." *Id.*

Parties can use either of these routes in a later contract to supersede a prior contract's terms. Where, as here, a broad integration clause expresses an unambiguous intent to supersede all prior agreements, the consistency of terms between the agreements is irrelevant. *See Archambo*, 646 N.W.2d at 177 & nn.15-16. And even if the contracts must cover the same subject matter for an integration clause to be effective, that condition is satisfied here. Though the agreements may differ in scope, they overlap in terms of the relevant subject matter—the sale and delivery of seat products from Tachi-S to Canoo.

The unpublished cases Canoo cites are not to the contrary. In those cases, the integration clauses were not as broad as the one at issue here. *See, e.g.*, *Ali v. Ahmed*, 2016 WL 155937, at *3-4 (Mich. Ct. App. Jan. 12, 2016) ("[T]he integration clause does not evidence an intent to abrogate *all* of the terms in the settlement agreement, only those terms related to the purchase and sale of the Liberty Tax franchises."); *Matthews-Hargreaves Chevrolet, Co. v. DeSantis*, 2024

WL 2499110, at *6 (Mich. Ct. App. May 23, 2024) ( integration clauses in a later agreement "were narrowly written" to supersede only certain prior arrangements, "not *any* prior arrangement"). And to the extent these cases might try to soften *Archambo*'s rigid treatment of integration clauses, *see, e.g.*, *Matthews-Hargreaves Chevrolet*, 2024 WL 2499110, at *6 ("While an integration clause nullifies all antecedent agreements, it only does so when the two agreements cover the same subject matter and include inconsistent terms." (citations, brackets, and internal quotation marks omitted)), it is no contest between a published Michigan Supreme Court case and unpublished cases from the Michigan Court of Appeals, *see Avantax Wealth Mgmt., Inc. v. Marriott Hotel Servs., Inc.*, 108 F.4th 407, 414 (6th Cir. 2024) (state supreme court decisions are binding); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1095-96 (6th Cir. 2010) (unpublished Michigan Court of Appeals cases are not binding).

In a final attempt to escape the integration clause's plain meaning, Canoo argues that "absurd results" would arise if the NASA Agreement superseded the entire Collaboration Agreement. Appellant Br. 18-19; Reply Br. 18-23. For instance, "each party would be free to use or disclose the other's confidential information, specifications, and designs without restrictions, and Canoo would have indemnification obligations only for the NASA seats but no other products." Appellant Br. 18. But "unambiguous contractual provision[s]" are "to be enforced as written unless the provision would violate law or public policy." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005). "Just as courts are not to rewrite the express language of statutes, it has long been the law in [Michigan] that courts are not to rewrite the express terms of contracts." *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 817 (Mich. 2008). Michigan law thus does not permit us to "abrogate unambiguous contractual terms on the basis of reasonableness determinations." *Rory*, 703 N.W.2d at 31.

Because the parties did not agree to arbitrate claims under the NASA Agreement and superseded the entirety of the Collaboration Agreement, the district court answered the contract question. *See Coinbase*, 602 U.S. at 150. It held there is no contract between the parties that delegates the threshold arbitrability question to an arbitrator and found that the parties did not agree to send the dispute to arbitration. *See id.* The district court therefore correctly denied Canoo's motion to compel arbitration. *See* 9 U.S.C. § 4; *Coinbase*, 602 U.S. at 148.

## III.   CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's order denying Canoo's motion to compel arbitration.